REBECCA E. SHOPE
(*Pro Hac Vice Application in Process*)
rshope@shumaker.com
SHUMAKER
1000 Jackson Street
Toledo, Ohio  43604-5573
Telephone:  (419) 321-1453
Facsimile:  (419) 241-6894

HIEU WILLIAMS (SBN 280585)
hwilliams@hkemploymentlaw.com
JESSE D. SUTZ (SBN 338412)
jsutz@hkemploymentlaw.com
HIRSCHFELD KRAEMER LLP
456 Montgomery Street, Suite 2200
San Francisco, CA  94104
Telephone:  (415) 835-9000
Facsimile:  (415) 834-0443

Attorneys for Defendants
FAIRLIFE, LLC and JEFF LOBUS

HIRSCHFELD KRAEMER LLP
ATTORNEYS AT LAW
SAN FRANCISCO

# UNITED STATES DISTRICT COURT

## NORTHERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| GREGORY WESTON, an individual,<br><br>Plaintiff,<br><br>vs.<br><br>FAIRLIFE, LLC, a Delaware corporation;<br>JEFF LOBUS, an individual; and DOES 1<br>through 50, inclusive,<br><br>Defendants. | Case No.<br><br>**DEFENDANTS' NOTICE OF REMOVAL**<br><br>[County of Contra Costa Superior Court Case<br>No. C22-00884]<br><br>Complaint Filed:  April 29, 2022 |

**TO:    THE HONORABLE JUDGES OF THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF CALIFORNIA, CIVIL DIVISION:**

Pursuant to 28 U.S.C. §§1332 and 1441, Defendants fairlife, LLC ("fairlife") and Jeff

Lobus ("Lobus") (collectively "Defendants"), remove this action, currently pending in the

Superior Court of the State of California, County of Contra Costa, designated as Case No. C22-

00884, to the District Court for the Northern District of California.  As grounds for Notice of Removal, Defendants state as follows:

1.    On or about April 29, 2022, Plaintiff Gregory Weston ("Plaintiff") filed a Summons and Complaint against Defendants in the Superior Court of the State of California, County of Contra Costa, Case No. C22-00884, assigned to the Honorable Judge John P. Devine.

2.    Plaintiff's Complaint alleges claims for race discrimination, harassment and hostile work environment, failure to prevent discrimination and harassment, wrongful termination, negligence, and unfair business practices.  *See* Complaint, attached as Exhibit 1.

3.    On or about May 6, 2022, fairlife was served with a copy of the Summons and Complaint.

4.    On or about May 14, 2022, Lobus was served with a copy of the Summons and Complaint.

5.    Pursuant to 28 U.S.C. §1446(a), copies of all process, pleadings, and orders filed and served in the case are attached as Exhibit 2.  To the best of Defendants' knowledge and belief, these documents constitute all of the process, pleadings, and orders as of the date of this filing as required by 28 U.S.C. §1446(a).

6.    Venue is proper in this Court.  This Court is in the judicial district and division embracing the place where the state court case was brought and is pending.  Thus, it is the proper district court to which this case should be removed.  28 U.S.C. §§1441(a) and 1446(a).

## I.    The Removal is Timely

7.    This notice is timely filed within thirty (30) days after receipt of a copy of the Complaint and Summons as is required by 28 U.S.C. §1446(b).  *See Murphy Bros., Inc. v. Michetti Pipe Stringing, Inc.*, 526 U.S. 344 (1999). The first date on which Defendants received notice of this action was May 6, 2022.

## II.    Grounds for Removal Based on Diversity

8.    Under 28 U.S.C. §1441, "any civil action brought in a State court of which the district courts of the United States have original jurisdiction, may be removed by the defendant or the defendants, to the district court of the United States for the district and division embracing the

HIRSCHFELD KRAEMER LLP
ATTORNEYS AT LAW
SAN FRANCISCO

2

1   place where such action is pending."

2       9.      Here, Defendants seeks to remove the case to federal court based on diversity

3   jurisdiction.  Where removal is based on diversity jurisdiction, the removing party must establish

4   complete diversity of citizenship among the parties and that the amount in controversy exceeds

5   $75,000. 28 U.S.C. §1332.

6       10.     As set forth more fully below, Defendants are entitled to remove this action to this

7   Court under 28 U.S.C. §1441, because this Court has original jurisdiction pursuant to 28 U.S.C.

8   §1332 as complete diversity exists between the parties and Plaintiff asserts claims that, if proven,

9   could exceed $75,000.00, exclusive of interest and costs.

10  **III.     Plaintiff is a Citizen of California.**

11      11.     Plaintiff is an individual domiciled in the County of Contra Costa, in the State of

12  California.  *See* Compl, ¶1 ("Plaintiff, Gregory Weston…is, and at all relevant times was, a

13  resident of the County of Contra Costa, in the State of California").

14      12.     For diversity purposes, a natural person is a "citizen" of the state in which he or

15  she is domiciled.  *See Kantor v. Wellesley Galleries, Ltd.,* 704 F.2d 1088, 1090 (9th Cir. 1983).

16  **IV.      Defendant fairlife is a Citizen of Delaware and Georgia**

17      13.     fairlife is a limited liability company.  *See* Declaration of Andy Arquette [Arquette

18  Decl.], ¶3, attached as Exhibit 3.

19      14.     A limited liability company has the citizenship of each of its members.  *Johnson v.*

20  *Columbia Properties Anchorage, LP,* 437 F.3d 894, 899 (9th Cir. 2006) (limited liability

21  company is a citizen of every state of which its owners/members are citizens).

22      15.     fairlife has one member, Coca-Cola Co. ("KO").  Ex. 3, ¶4.  Therefore, fairlife is a

23  citizen of the same states as KO.

24      16.     For the purposes of diversity jurisdiction, a corporation is a citizen of "every State

25  and foreign state by which it has been incorporated and of the State or foreign state where it has

26  its principal place of business[.]" 28 U.S. Code § 1332(c)(1).

27      17.     KO is incorporated under the laws of the State of Delaware and its headquarters—

28  and principal place of business—is in Atlanta, Georgia.   Ex. 3, ¶5-6.

HIRSCHFELD KRAEMER LLP
ATTORNEYS AT LAW
SAN FRANCISCO

3

18.     The United States Supreme Court in *The Hertz Corp. v. Friend* held that a corporate entity's "principal place of business" for determining its citizenship is its "nerve center":

> We conclude that "principal place of business" is best read as referring to the place where a corporation's officers, direct, control, and coordinate the corporation's activities.  It is the place that Courts of Appeal have called the corporation's "nerve center." And in practice it should normally be the place where the corporation maintains its headquarters—provided that the headquarters is the actual center of direction, control, and coordination, i.e., the "nerve center"…

559   U.S. 77, 92-93 (2010),

19.     fairlife's officers work out of it's principal place of business in Atlanta Georgia, which is the location from which they direct, control, and coordinate KO's corporate activities. Ex. 3, ¶6. This is also the location where the majority of its executive and administrative functions are performed. *Id.*

20.     Accordingly, fairlife is a citizen of Delaware and Georgia.  *See* 28 U.S.C. §1332(c)(1).

**V.     Defendant Lobos is a Citizen of Georgia**

21.     Lobus is an individual domiciled in the County of Cherokee, in the State of Georgia, and is therefore a citizen of the state of Georgia.  Compl., ¶3 ("…Defendant Jeff Lobus is, and at all relevant times was, a resident of Cherokee County, Georgia.").  *See Kantor, supra* (for diversity jurisdiction, an individual is a citizen of the state where he or she is domiciled).

**VI.     The Presence of Doe Defendants Does Not Impact Diversity Jurisdiction**

22.     The presence of Doe defendants in this case has no bearing on diversity of citizenship for removal. 28 U.S.C. §1441(a) ("For purpose of removal under this chapter, the citizenship of defendants sued under fictitious names shall be disregarded.")  Pursuant to 28 U.S.C. §1441(a), the residence of fictitious and unknown defendants should be disregarded for purposes of establishing removal jurisdiction under 28 U.S.C. §1332. *Fristoe v. Reynolds Metals Co.,* 615 F.2d 1209, 1213 (9th Cir. 1980) (unnamed defendants are not required to join in a removal petition).

HIRSCHFELD KRAEMER LLP
ATTORNEYS AT LAW
SAN FRANCISCO

4

**VII. The Alleged Damages Exceed $75,000**

23.     In cases where the complaint does not specifically indicate that the amount in controversy is in excess of $75,000.00, a defendant must show that the amount in controversy exceeds the jurisdiction threshold.  *Singer v. State Farm Mut. Auto. Ins. Co.,* 116 F.3d 373, 376 (9th Cir. 1997).  A court "may consider whether it is 'facially apparent' from the complaint that the jurisdictional amount is in controversy."  *Id.,* 377.   However, as explained by the Ninth Circuit, "the amount-in-controversy inquiry in the removal context is not confined to the face of the complaint." *Valdez v. Allstate Ins. Co.,* 372 F.3d 1115, 1117 (9th Cir. 2004) (finding that the Court may consider facts presented in the removal petition). A plaintiff cannot evade federal jurisdiction by alleging that the amount in controversy falls below the jurisdictional minimum. *Standard Fire Ins. Co v. Knowles,* 133 S. Ct. 1345, 1350 (2013); *Rodriguez v. AT&T Mobility Serv., LLC,* 728 F.3d 975, 978-82 (9th Cir. 2013).

24.     In the present case, Plaintiff alleges seven claims for relief arising out of his employment and termination of that employment.  *See* Exhibit 1.

25.     The Complaint states in relevant part that Plaintiff was provided with a starting base salary of $185,000, as well as additional benefits.  *See id.,* ¶15.  This included a Leadership Incentive Award ("LIA") of up to 25% of his salary and an annual merit bonus of up to another 30% of his salary.  *Id.*

26.     Plaintiff further alleges in the Complaint that Plaintiff's total bonus was estimated at over $120,000.  *See id.,* ¶17.

27.     Plaintiff further alleges in the Complaint that in the beginning of 2022, Plaintiff's LIA was approximately $45,000. *See id.,* ¶29.

28.     Plaintiff further alleges in the Complaint that Plaintiff's estimated merit bonus was over $80,000.  *See id.*

29.     Plaintiff seeks statutory damages, special damages for emotional distress, general damages, punitive damages, attorneys' fees, and costs.  *See id.,* Prayer for Relief.

30.     In determining the amount in controversy, a court considers the aggregate of all such damages.  *Galt G/S v. JSS Scandinavia,* 142 F.3d 1150, 1156 (9th Cir. 1998) (claims for

5

HIRSCHFELD KRAEMER LLP
ATTORNEYS AT LAW
SAN FRANCISCO

statutory attorneys' fees are included in amount in controversy regardless of whether discretionary or mandatory); *Davenport v. Mut. Benefit Health & Accident Ass'n,* 325 F.2d 785, 787 (9th Cir. 1963) (punitive damages considered where recoverable under state law).

31.    While Defendants deny any liability as to Plaintiff's claims, the amount in controversy requirement is satisfied because "it is more likely than not" that the amount exceeds the jurisdictional minimum of $75,000. *See Sanchez v. Monumental Life Ins.,* 102 F.3d 398, 404 (9th Cir. 1996).

32.    To establish the amount in controversy, a court may also rely on jury verdicts in cases involving similar facts. *Simmons v. PCR Tech.,* 209 F. Supp.2d 1029, 1033 (N.D. Cal. 2002). California verdicts in similar cases often exceed $75,000. *See Watson v. Department of Rehabilitation,* 212 Cal. App. 3d 1271, 1293-94 (1989) (awarding over $1 million in emotional distress damages in a race discrimination case); *Iwekaogwu v. City of Los Angeles,* 75 Cal. App. 4th 803 (1999) (affirming emotional distress damages award of over $450,000 in a racial retaliation case); *Mitchell v. Solyman,* C.D. Cal., Case No. 00-12951-AHM-CTX (Aug. 12, 2002) ($500,000 jury award for claims of race discrimination, including $50,00 for pain and suffering, $75,000 in statutory damages, and $187,734 in attorney's fees).

33.    Here, Plaintiff alleges he lost an estimated bonus of over $120,000, plus lost out on earnings for which his base salary is alleged at $185,000. *See* Exhibit 1. These amounts alone, not inclusive of attorney's fees and punitive damages, far exceed the $75,000 threshold requirement.

34.    Pursuant to 28 U.S.C. §1446(b), Defendant has given written notice of removal of this action to Plaintiff and has contemporaneously filed a copy of this Notice with the Clerk of the Superior Court of the State of California, County of Contra Costa, attached as Exhibit 3.

35.    Nothing in this Notice of Removal should be construed as an admission or acknowledgment of liability, a waiver of defenses, or admission that Plaintiff is entitled to any damages. Defendants expressly deny all liability.

36.    Defendants will file a responsive pleading to Plaintiff's Complaint in accordance with Rule 81(c) of the Federal Rules of Civil Procedure, unless such response date is otherwise

HIRSCHFELD KRAEMER LLP
ATTORNEYS AT LAW
SAN FRANCISCO

6

1    extended by this Court.

2          37.    Defendants expressly reserve the right to submit additional evidence in support of

3    the Notice of Removal, including as may be necessary to address and refute any contentions set

4    forth in a motion to remand.

5          38.    The undersigned is counsel for Defendants and is duly authorized to effect

6    removal on behalf of Defendants..

7          **WHEREFORE**, Defendants fairlife, LLC and Jeff Lobus respectfully removes this action

8    from the Superior Court of the State of California, County of Contra Costa to the United States

9    District Court for the Northern District of California.

10

11   Dated:  June 6, 2022                                    HIRSCHFELD KRAEMER LLP

12

13                                                           By: /s/ Hieu Williams

14                                                                Hieu Williams
                                                                  Jesse D. Sutz
15                                                           Attorneys for Defendants
                                                             FAIRLIFE, LLC and JEFF LOBUS

16

17

18

19

20

21

22

23

24

25

26

27

28

HIRSCHFELD KRAEMER LLP
ATTORNEYS AT LAW
SAN FRANCISCO

7

NOTICE OF REMOVAL
CASE NO.

# Exhibit 1

FILED

APR 29 2022

K. BIEKER, CLERK OF THE COURT
SUPERIOR COURT OF CALIFORNIA
COUNTY OF CONTRA COSTA
By_____, Deputy Clerk

FAX FILE

1  F. Shawn Azizollahi (SBN 268116)
   shawn@marqueelaw.com
2  Poya Ghasri (SBN 268119)
   poya@marquelaw.com
3  Gary Brotman (SBN 287726)
   gary@marquelaw.com
4  MARQUEE LAW GROUP, A Professional Corporation
   9100 Wilshire Boulevard, Suite 445 East Tower
5  Beverly Hills, California 90212
   (310) 275-1844 telephone
6  (310) 275-1801 fax
7

PER LOCAL RULE, THIS
CASE IS ASSIGNED TO
DEPT. 09, FOR ALL
PURPOSES

8  Attorneys for Plaintiff
   GREGORY WESTON
9

SUMMONS ISSUED

10

11           **SUPERIOR COURT OF THE STATE OF CALIFORNIA**

12                   **COUNTY OF CONTRA COSTA**

13

14  GREGORY WESTON, an individual;          ) Case No.: C 2 2 - 0 0 8 8 4 -
                                            )
15              Plaintiff,                   ) **COMPLAINT FOR:**
                                            )
       vs.                                  )
16                                          ) 1. **Race Discrimination in Violation of Cal.**
                                            )    **Gov. Code Section 12900 et seq.;**
17                                          ) 2. **Harassment and Hostile Work**
    FAIRLIFE, LLC., a Delaware corporation; )    **Environment in Violation of Cal. Gov.**
18  JEFF LOBUS, an individual; and DOES 1   )    **Code Section 12900 et seq.;**
    through 50, inclusive.                  ) 3. **Failure to Prevent Discrimination and**
19                                          )    **Harassment in Violation of Cal. Gov.**
                                            )    **Code Section 12900 et seq.;**
20              Defendants.                  ) 4. **Wrongful Termination In Violation of**
                                            )    **Public Policy (Count I);**
21                                          ) 5. **Wrongful Termination In Violation of**
                                            )    **Public Policy (Count II);**
22                                          ) 6. **Negligence;**
                                            ) 7. **Unlawful Business Practices in Violation**
23                                          )    **of Bus. and Prof. Code Section 17200 et**
                                            )    **seq.**
24                                          )
25

26

27

28

                                -1-
                            COMPLAINT

Submitted By:
D&T Legal Services  925-947-1221
2146 N. Main Street, Suite A
Walnut Creek, CA 94596

1  Plaintiff alleges:

**PARTIES**

1.      Plaintiff, Gregory Weston ("Plaintiff" herein), is, and at all relevant times was, a resident of the County of Contra Costa, in the State of California.

2.      Plaintiff is informed and believes, and based thereon alleges, that Defendant Fairlife, LLC ("Fairlife") is, and at all relevant times was, a corporation organized and existing under the laws of the state of Delaware, qualified to do business in the state of California, with its principal place of business located at 1001 West Adams Street, Chicago, Illinois 60607.

3.      Plaintiff is informed and believes, and based thereon alleges, that Defendant Jeff Lobus is, and at all relevant times was, a resident of Cherokee County, Georgia. At all relevant times, Lobus was a Vice President of Field Sales for Fairlife and Plaintiff's direct supervisor, who controlled the wages, hours, and working conditions of Plaintiff.

4.      Plaintiff is ignorant of the true names and capacities of the defendants sued herein as DOES 1 through 50, inclusive, and therefore sues these defendants by such fictitious names. Plaintiff will amend this Complaint to allege the true names and capacities of said defendants when ascertained. Plaintiff is informed and believes, and based thereon allege, that each of the fictitiously named defendants is responsible in some manner for the occurrences herein alleged, and that Plaintiff's damages as herein alleged were proximately caused by said defendants. (Fairlife, Lobus, and DOES 1 through 50 shall collectively herein be referred to as "Defendants").

5.      At all relevant times herein, Defendants employed Plaintiff, within the meaning of California Government Code § 12926(d). Plaintiff was employed by Defendants and worked remotely for Defendants from Danville, California, until, as alleged herein, Plaintiff's employment was wrongfully terminated on or about December 13, 2021, for unlawful reasons in violation of the California Fair Employment and Housing Act ("FEHA," California Government Code § 12900 et seq.) and in violation of California public policy.

6.      Unless otherwise alleged in this Complaint, Plaintiff is informed and believes, and based thereon alleges, that each of the Defendants sued herein was, at all relevant times hereto,

-2-
COMPLAINT

the employer, owner, principal, franchisee, proxy, agent, employee, supervisor, representative, manager, managing agent, joint employer, and/or alter ego of the remaining Defendants, and was acting, at least in part, within the course and scope of such employment and agency, with express and implied permission, consent, and knowledge. The above Defendants, managing agents, and supervisors aided, abetted, condoned, permitted, willfully ignored, approved, authorized, and/or ratified the unlawful acts described herein, and each and every one of the acts and omissions alleged herein were performed by, and/or are attributable to all Defendants.

## JURISDICTION

7.     Plaintiff is informed and believes, and based thereon alleges, that at all times herein mentioned, Defendants, and each of them, were doing business in the State of California such that the exercise of jurisdiction by the Superior Court of California would not be inconsistent with the Constitution of the State of California and/or the United States of America.

8.     The Superior Court of California has jurisdiction over this action pursuant to California Code of Civil Procedure Section 410.10.

9.     The total amount in controversy for claims of Plaintiff is more than Twenty-Five Thousand Dollars ($25,000).

## VENUE

10.     Plaintiff is informed and believes, and based thereon alleges, that venue is proper in Contra Costa County because Defendants, and each of them, have conducted business within the County of Contra Costa, employed Plaintiff within the County of Contra Costa, and a substantial portion of the wrongful acts complained of occurred therein.

## GENERAL ALLEGATIONS

11.     Plaintiff alleges and incorporates herein by this reference each and every allegation set forth in all previous paragraphs of this Complaint.

-3-
COMPLAINT

*Plaintiff's Employment:*

12.    Defendants employed Plaintiff from in or about February 12, 2021 until on or about December 13, 2021 (the "Employment Period").

13.    Fairlife is a producer of dairy-based products, distributing its products throughout the United States. Per its website, Fairlife touts itself as an equal opportunity employer that does "not discriminate on the basis of race, color, religion, national origin, gender, age, disability, veteran status, or any other category protected by law." Unfortunately, this representation did not apply to Plaintiff's employment, as he was deprived of the very equal opportunity that Fairlife alleges to promote.

14.    Defendants employed Plaintiff as the Senior Director of Sales – West Zone throughout his employment. Plaintiff's responsibilities included, but were not limited to, overseeing sales of Fairlife products throughout the western region of the United States, developing marketing strategy, and managing a team of approximately five (5) salespersons spread throughout the western region.

15.    The offer letter signed by Plaintiff and Defendants on or about February 12, 2021 (the "Offer Letter"), provided Plaintiff with a starting base salary of $185,000, as well as benefits including, but not limited to, medical, dental, life insurance, vision, short-term disability, and long-term disability benefits. Plaintiff's employment further entitled him to a Leadership Incentive Award ("LIA") of up to 25% of his salary, and an annual merit bonus of up to another 30% of his salary, multiplied by the company's performance. Although the LIA states that it was a one-time payment, Plaintiff negotiated with Defendants to receive an annual LIA award.

*Plaintiff's Protected Status:*

16.    Plaintiff is a 48-year-old African American male in a workplace that promotes itself as diverse, however, is lacking such diversity amongst its Senior Director/VP/Executive level members. The demographic of Defendants' Senior Director/VP/Executive level members is dominated by Caucasian males, who are valued, hired, promoted, and retained without regard for merit. Plaintiff, the only African American member of the Senior Director sales team, was

1  wrongfully terminated for discriminatory reasons. Consequently, Plaintiff is a protected

2  employee, as defined under California Law. (See. Cal. Gov't Code § 12940, *et seq.*).

3  **Plaintiff's Job Performance:**

4      17.    Plaintiff was an exemplary employee of Defendants throughout the entirety of the

5  Employment Period. In fact, Plaintiff maintained the highest sales numbers of all the Senior

6  Directors of Sales throughout his employment. Shortly prior to his wrongful termination,

7  Plaintiff was informed by Defendants that he was set to receive the full amount of his LIA award

8  and merit bonus for his excellent work. Per Plaintiff's calculations, this would have resulted in a

9  total bonus of over $120,000.00.

10      18.    Moreover, Plaintiff's personnel file is devoid of any negative performance

11  reviews, write ups, or complaints against him. The only mark against Plaintiff's record is the

12  alleged violation of Fairlife's harassment and discrimination policy, curiously brought to

13  Plaintiff's attention just prior to earning his LIA and merit bonus. The suspicious timing of this

14  allegation resulted in Plaintiff's wrongful termination.

15  **Defendants' Discriminatory Adverse Employment Actions:**

16      19.    In order to obtain his employment with Defendants, Plaintiff was required to

17  participate in a series of interviews. Plaintiff's initial interview took place with Lobus, his direct

18  supervisor and a Caucasian male. Plaintiff then had a second interview with Defendant's Vice

19  President of Commercialization Colin Schriver and Defendant's Vice President of National

20  Accounts Mike DiPasquale. Plaintiff is informed and believes that Schriver and DiPasquale are

21  both Caucasian males.

22      20.    Plaintiff then partook in a third and final interview with Defendant's former Chief

23  Operating Officer Jeremy Faa, a Caucasian male, and Fairlife's now retired Chief Executive

24  Officer Bill Kelly, another Caucasian male. It was after this series of interviews that Faa and

25  Kelly approved the hiring of Plaintiff as a Senior Director of Sales and authorized the Offer

26  Letter received by Plaintiff. It should be noted that Faa has since been replaced by Karim Yahi, a

27  Caucasian male, and Kelly has been replaced by current CEO Tim Doelman. As one could guess,

28  Doelman is a Caucasian male.

21.     As the Senior Director of Sales – West Zone, Plaintiff was one of four (4) members of the Senior Director team under Lobus. The Senior Director sales team was comprised of four (4) members covering the north, central, south, and west zones. The three (3) remaining members of the Senior Director sales team were all Caucasian (two male and one female).

22.     Moreover, Plaintiff was placed in charge of a sales team that was comprised of five (5) members, each of whom were Caucasian. The lack of diversity within the workplace was apparent on its face.

23.     In fact, the issue of diversity was addressed during Plaintiff's interview with Faa and Kelly, wherein they admitted that Fairlife needed to improve upon its diversity, particularly amongst its leadership. Plaintiff was seen as a good diversity hire. Faa would go on to set bi-monthly calls with Plaintiff wherein he would discuss Fairlife's need to improve upon the diversity of its employees, particularly those in leadership roles. Interestingly enough, Faa requested that Plaintiff, the only African American Senior Director/VP/Executive, take leadership in the initiative to improve diversity and equal opportunity in Fairlife's hiring practices. However, Faa would leave Fairlife in or about July 2021. No one else for Defendants would follow up with Plaintiff concerning any diversity initiatives.

24.     While the remaining Senior Director/VP/Executive team at Fairlife seemed to have little concern for diversity, or the lack thereof, Plaintiff's relationship with Lobus was particularly contentious. Lobus has been employed by Fairlife for approximately nine (9) years, and previously held Plaintiff's position as the Senior Director of Sales. As such, Lobus had worked side by side with each of the other three (3) Caucasian Senior Directors of Sales prior to his promotion. Lobus appeared to take issue with the fact that Plaintiff received the Senior Director position, as opposed to an internal promotion of one of his close associates, all of whom happened to be Caucasian men.

25.     As a result, Plaintiff's relationship with Lobus was not what he would have expected from a Vice President and direct supervisor. Lobus rarely reached out to Plaintiff to discuss work, and became instantly critical, if not angered, whenever Plaintiff would offer

-6-
COMPLAINT

opposition or constructive criticism to his approach to certain tasks/initiatives. In fact, Plaintiff was forced to confront Lobus for yelling at Plaintiff in front of the other Senior Directors. This only angered Lobus even further and created a larger divide in their professional relationship.

26.     Although Plaintiff worked remotely, Defendants held many virtual meetings, and multiple events where Fairlife employees would meet in person. While these events were intended to be for work-related purposes, they often involved extra-curricular activities such as dinners, drinking, bars, etc. Lobus attended and/or orchestrated many of these extra-curricular activities and was often the most senior employee at these events, setting the example for the conduct of others.

27.     While Plaintiff saw no issue with these sorts of team bonding activities, Lobus took the extra-curriculars a step further, engaging in more lewd and lascivious conduct. For instance, Lobus would frequent strip-clubs with fellow employees. Lobus would also openly discuss such ventures and joke about excessive drinking, being hung over, and made lewd and sexually explicit comments in front of the female employees. Being that his relationship with Lobus was somewhat tenuous, Plaintiff chose not to speak out against him for violating Fairlife's code of conduct out of fear for retaliation.

28.     Nonetheless, Plaintiff continued to put his head down, work hard, and focus on sales and supporting his sales team. Plaintiff had an excellent report with his sales team. Plaintiff prided himself on having a (virtual) open door policy for his team to express their concerns, whether it be business related or personal. Plaintiff believed that asking his team how they were doing, learning about their families, and their likes and dislikes, and being open in return would help foster a bond within his team. That bond would then encourage his team to work harder for one another. Plaintiff's ideology proved highly successful, as evidenced by his team's sales numbers during the Employment Period.

29.     Plaintiff was soon set to reap significant rewards from his success. In the beginning of 2022, Plaintiff was set to receive his LIA, which he was informed would be the maximum 25% of his salary. This would equate to a bonus of approximately $45,000. Plaintiff was also informed that his excellent work, coupled with Fairlife's performance due in large part

1  to Plaintiff's sales numbers, was going to result in a full merit bonus of 30% of Plaintiff's salary

2  multiplied by the company's performance at 150% due to exceeding sales projections at the end

3  of the fiscal year. Per Plaintiff's calculations, this would have resulted in a merit bonus of over

4  $80,000.

5       30.    However, Plaintiff's success appeared to irk Lobus, particularly as Plaintiff

6  continued to outshine his fellow Senior Directors, each of whom were Caucasian. While Plaintiff

7  was aware of this tension, he did not expect the discriminatory and wrongful actions Defendants

8  would soon take against him.

9       31.    On or about December 13, 2021, Lobus requested a Zoom call with Plaintiff to

10  discuss some structural changes to the West zone. Once Plaintiff joined the call with Lobus,

11  Defendant's Human Resources Manager Shannon Brozewicz appeared on the call.

12       32.    Brozewicz and Lobus would go on to accuse Plaintiff of flirtatious behavior with

13  a member of his sales team. Although it was now December, mere weeks before Plaintiff's

14  bonuses would be earned, Brozewicz and Lobus claimed that the alleged misconduct took place

15  between April and July. Lobus claimed that an investigation was conducted, however this was

16  the first and only time Plaintiff had learned of this issue. In direct contravention to Respondent's

17  own policy for investigating such complaints, Plaintiff was never contacted about the allegations,

18  never interviewed, and never offered the opportunity to respond to the accusations.

19       33.    Despite being one of the most, if not the most successful Senior Director of Sales

20  for Defendants, and not having a negative review, prior complaint, or a single blemish to his

21  employment record, Defendants took this as their opportunity to terminate Plaintiff's

22  employment. Defendants cited an alleged violation of Fairlife's harassment and discrimination

23  policy. Plaintiff is informed and believes, and based thereon alleges, that the termination of his

24  employment was done to prevent the anticipated windfall of bonus earnings owed to Plaintiff,

25  and was an act of discrimination proliferated by Defendants in an effort to maintain the sanctity

26  of its Caucasian male leadership team.

27

28

*Exhaustion of Administrative Remedies:*

34.    At all applicable times mentioned herein, Defendants regularly employed five or more persons in California, bringing Defendants subject to the provisions of the Fair Employment and Housing Act ("FEHA").

35.    Plaintiff has adequately exhausted all of his administrative remedies under the FEHA and obtained a valid "right to sue" letter against Defendants from the Department of Fair Employment and Housing.

## FIRST CAUSE OF ACTION

(Race Discrimination in Violation of Cal. Gov. Code Section 12900 et seq.

by Plaintiff Against Fairlife and DOES 1 - 50)

36.    Plaintiff alleges and incorporates herein by this reference each and every allegation set forth in all previous paragraphs of this Complaint.

37.    There existed an employer-employee relationship between Plaintiff and Defendants during the Employment Period and, at all times herein, Plaintiff was duly qualified and performed his employment duties in a satisfactory manner.

38.    Plaintiff is a 48-year-old African American male who was the only African American Senior Director of Sales. As such, Plaintiff is a member of a protected class within the meaning of FEHA and is entitled to its guarantees of full and equal access to employment.

39.    It is unlawful for an employer to discriminate against an employee based on the employee's "race, religious creed, color, national origin, ancestry, physical disability, mental disability, medical condition, genetic information, marital status, sex, gender, gender identity, gender expression, age, sexual orientation, or military and veteran status of any person" or to "discharge the person from employment… or to discriminate against the person in compensation or in terms, conditions, or privileges of employment." (Cal. Gov't Code § 12940(a)).

40.    Plaintiff was, at all times herein, an "employee" covered by California Government Code § 12900 et seq.

41.     The Company was at all relevant times hereto, an "employer" within the meaning of California Government Code § 12900 et seq.

42.     Plaintiff's race and/or other characteristics protected by FEHA were motivating factors in Defendant's adverse treatment of Plaintiff, as set forth in detail herein above.

43.     Plaintiff has performed competently and has gone above and beyond in his position, has suffered an adverse employment action, and the circumstances give rise to the discriminatory conduct from Defendants.

44.     As alleged herein above, Defendant's Senior Director/VP/Executive level employees are predominantly Caucasian men. Plaintiff's direct supervisor, Lobus, is a Caucasian male; Defendant's Vice President of Commercialization Colin Schriver and Vice President of National Accounts Mike DiPasquale are both Caucasian men; Defendants former COO Jeremy Faa and current COO Karim Yahi are Caucasian men; and Defendant's former CEO Bill Kelly and current CEO Tim Doelman are both Caucasian men. Even Plaintiff's five (5) person sales team was entirely Caucasian. The lack of diversity in Defendant's workforce was apparent on its face.

45.     Moreover, Defendants openly admitted to Plaintiff that there was a lack of diversity, particularly amongst those in leadership positions. Plaintiff was viewed as a good diversity hire. Defendants initially requested that Plaintiff, the only African American Senior Director/VP/Executive, take leadership in the initiative to improve diversity and equal opportunity in Fairlife's hiring practices. However, there was very little follow through on this initiative by Defendants.

46.     Although Plaintiff excelled in his role, he was looked upon with disfavor by Defendants, particularly by Lobus. Lobus appeared to take issue with the fact that Plaintiff received the Senior Director position, as opposed to an internal promotion of one of his close associates, all of whom happened to be Caucasian men. As a result, Plaintiff's relationship with Lobus was strained. Lobus rarely reached out to Plaintiff to discuss work, and became instantly critical, if not angered, whenever Plaintiff would offer opposition or constructive criticism to his approach to certain tasks/initiatives. In fact, Plaintiff was forced to confront Lobus for yelling at

Plaintiff in front of the other Senior Directors. This only angered Lobus even further and created a larger divide in their professional relationship. It was then Lobus who brought the outlandish allegations of flirtatious behavior against Plaintiff and terminated his employment.

47.     Defendants' conduct as alleged herein violated FEHA and Defendant committed unlawful employment practices, including, without limitation, discriminating against Plaintiff by materially affecting the terms and conditions of his employment, in whole or in part on the basis of Plaintiff's race and/or other protected characteristics in violation of California Government Code §12940(a).

48.     As a direct, foreseeable, and proximate result of Defendants' actions, Plaintiff has suffered and continues to suffer aggravation of his injuries, substantial losses in earnings and job benefits, humiliation, emotional distress, and physical and mental pain and anguish all to his damage in a sum according to proof at the time of trial.

49.     Plaintiff has incurred and continues to incur legal expenses and attorneys' fees pursuant to Government Code § 12965(b). Plaintiff is entitled to recover reasonable attorneys' fees and costs in an amount according to proof at the time of trial.

50.     Defendants' conduct was willful, knowing, malicious, intentional, and done in reckless disregard of the damaging consequences to Plaintiff. Defendants' conduct evidenced a conscious disregard of Plaintiff's rights. Plaintiff is thus entitled to recover actual, compensatory, punitive, and exemplary damages in amounts according to proof at time of trial.

## SECOND CAUSE OF ACTION

(Harassment and Hostile Work Environment in Violation of Cal. Gov. Code Section 12900 et seq. by Plaintiff Against Defendants and DOES 1 - 50)

51.     Plaintiff alleges and incorporates herein by this reference each and every allegation set forth in all previous paragraphs of this First Amended Complaint.

52.     There existed an employer-employee relationship between Plaintiff and Defendants during the Employment Period and, at all times herein, Plaintiff was duly qualified and performed his employment duties in a satisfactory manner.

53.     It is unlawful for an employer to harass an employee based on the employee's "race, religious creed, color, national origin, ancestry, physical disability, mental disability, medical condition, genetic information, marital status, sex, gender, gender identity, gender expression, age, sexual orientation, or military and veteran status of any person." Harassment of an employee "shall be unlawful if the entity, or its agents or supervisors, knows or should have known of this conduct and fails to take immediate and appropriate corrective action. (Cal. Gov't Code § 12940(j)).

54.     Plaintiff's race and/or other characteristics protected by FEHA were motivating factors in Defendants' adverse treatment of Plaintiff.

55.     In perpetrating the above-described action, the Defendants, and each of them, and/or their agents or employees engaged in a pattern and practice of unlawful harassment in violation of FEHA and California Government Code § 12940(j). Defendants, and each of them, harassed Plaintiff and/or failed to take immediate and appropriate corrective action. The harassment was sufficiently pervasive and severe as to alter the conditions of employment and create a hostile or abusive work environment.

56.     As a proximate result of Defendants' willful, knowing, and intentional discrimination against Plaintiff, Plaintiff has suffered and continues to suffer humiliation, emotional distress, and physical and mental pain and anguish, all to his damage in a sum according to proof at the time of trial.

57.     Plaintiff has incurred and continues to incur legal expenses and attorneys' fees pursuant to Government Code § 12965(b). Plaintiff is entitled to recover reasonable attorneys' fees and costs in an amount according to proof at the time of trial.

58.     Defendants' conduct was willful, knowing, malicious, and intentional and done in reckless disregard of the damaging consequences to Plaintiff. Defendants' conduct evidenced a conscious disregard of Plaintiff's rights. Plaintiff is thus entitled to recover actual, compensatory, punitive, and exemplary damages in amounts according to proof at time of trial.

### THIRD CAUSE OF ACTION

(Failure to Prevent Discrimination and Harassment in Violation of Cal. Gov. Code

Section 12900 et seq. by Plaintiff Against Fairlife and DOES 1 - 50)

59.     Plaintiff alleges and incorporates herein by this reference each and every allegation set forth in all previous paragraphs of this First Amended Complaint.

60.     There existed an employer-employee relationship between Plaintiff and Defendants during the Employment Period and, at all times herein, Plaintiff was duly qualified and performed his employment duties in a satisfactory manner.

61.     California law requires that employers take reasonable steps to prevent and correct wrongful behavior, including, but not limited to, harassing and discriminatory behavior. (*See* Gov. Code § 12940(k)) (It is unlawful "For an employer... to fail to take all reasonable steps necessary to prevent discrimination and harassment from occurring.")). Pursuant to this statute, Defendants were required to take all reasonable steps to prevent discrimination against Plaintiff based on Plaintiff's disability, gender, and/or other protected characteristics.

62.     As alleged herein above, Defendants failed to prevent their agents, supervisors, employees, and others from engaging in intentional actions that resulted in Plaintiff being treated less favorably because of Plaintiff's protected status (i.e., race). Rather than taking the initiative to improve diversity amongst those in leadership roles, Defendants chose to reverse course and wrongfully terminate Plaintiff's employment.

63.     Plaintiff is informed and believes, and based thereon alleges, that his race and/or other characteristics protected by FEHA were substantial motivating factors in the Defendants' adverse treatment of Plaintiff. Despite knowing its legal obligations, Defendants did nothing to prevent the rampant discrimination and harassment that Plaintiff suffered.

64.     Defendants knew, or reasonably should have known of the other Defendants and their agents, supervisors and employees' unlawful discrimination and harassment of Plaintiff, and that Defendants should have restrained such other Defendants from engaging in such conduct.

65.     As a direct, foreseeable, and proximate result of Defendants' actions, Plaintiff has suffered and continues to suffer aggravation of his injuries, substantial losses in earnings and job benefits, humiliation, emotional distress, and physical and mental pain and anguish all to his damage in a sum according to proof at the time of trial.

66.     Plaintiff has incurred and continues to incur legal expenses and attorneys' fees pursuant to Government Code § 12965(b). Plaintiff is entitled to recover reasonable attorneys' fees and costs in an amount according to proof at the time of trial.

67.     Defendants' conduct was willful, knowing, malicious, intentional, and done in reckless disregard of the damaging consequences to Plaintiff. Defendants' conduct evidenced a conscious disregard of Plaintiff's rights. Plaintiff is thus entitled to recover actual, compensatory, punitive, and exemplary damages in amounts according to proof at time of trial.

## FOURTH CAUSE OF ACTION

(Wrongful Termination in Violation of Public Policy (Count I)

by Plaintiff Against Fairlife and DOES 1 - 50)

68.     Plaintiff alleges and incorporates herein by this reference each and every allegation set forth in all previous paragraphs of this Complaint.

69.     At all relevant times herein, there existed an employer-employee relationship between Plaintiff and Defendants during the Employment Period.

70.     At all relevant times herein, Plaintiff was duly qualified and performed his employment duties in a satisfactory manner.

71.     At all relevant times to this action, Government Code § 12900 et seq. was in full force and effect and was binding upon Defendants. Defendants' termination of Plaintiff was in violation of fundamental public policies, articulated in the California Government Code, for the benefit of the public, including California Government Code Section 12900 et seq. California Government Code Section 12900 et seq.'s policy behind the prevention of discrimination protects Plaintiff and the public at large, is substantial and fundamental, was well established at the time of Plaintiff's discharge, and can form the basis for a common law wrongful termination

COMPLAINT

1  claim. (*Stevenson v. Superior Court (Huntington Mem. Hosp.)*, (1997) 16 Cal.4th 880, 889;

2  *Phillips v. St. Mary Regional Center* (2002) 96 Cal.App.4th 218, 227).

3     72.    Plaintiff's race and other protected characteristics were substantial motivating

4  reasons for Defendants' decision to terminate Plaintiff's employment.

5     73.    As a proximate result of Defendants' conduct, Plaintiff has sustained and

6  continues to sustain substantial losses in earnings and other employment benefits.

7     74.    As a result of such wrongful conduct, Plaintiff has suffered and continues to

8  suffer substantial humiliation, mental anguish, and emotional distress, on account of which

9  Plaintiff is entitled to compensatory damages, the exact amount and nature of which exceeds the

10  jurisdictional limits of this Court but is presently unknown to Plaintiff, who will either seek leave

11  to amend this Complaint upon ascertaining such information or will prove the same at the time of

12  trial.

13     75.    The acts of Defendants were intentional, malicious, wanton, oppressive, and

14  fraudulent, with conscious disregard of Plaintiff's rights and with intent to vex, injure, punish,

15  and annoy Plaintiff so as to cause the injuries sustained by Plaintiff to be within the meaning of

16  California Civil Code § 3294. Plaintiff is therefore entitled to punitive and exemplary damages in

17  an amount sufficient to punish and make an example of Defendants.

18

19                              **FIFTH CAUSE OF ACTION**

20                    (Wrongful Termination in Violation of Public Policy (Count II)

21                              by Plaintiff Against Fairlife and DOES 1 - 50)

22     76.    Plaintiff alleges and incorporates herein by this reference each and every

23  allegation set forth in all previous paragraphs of this Complaint.

24     77.    At all relevant times herein, there existed an employer-employee relationship

25  between Plaintiff and the Company during the Employment Period.

26     78.    At all relevant times herein, Plaintiff was duly qualified and performed his

27  employment duties in a satisfactory manner.

28

79.     A wrongful discharge in violation of public policy lies where an employee alleges that the employer terminated him to avoid paying earned wages and other amounts rightfully earned. (*Gould v. Maryland Sound Industries, Inc.*, (1995) 31 Cal.App.4th 1137). Defendants' acts constitute a wrongful termination in violation of public policy based upon its termination of Plaintiff's employment to avoid providing compensation owed to Plaintiff in the form of his LIA and merit bonus. Plaintiff was set to earn his LIA and merit bonus within weeks of his wrongful termination, as a result of a year's worth of hard work and dedication in improving Defendants' sales.

80.     Plaintiff's impending earned bonuses were a substantial motivating reason for Defendants' decision to terminate Plaintiff's employment.

81.     As a proximate result of Defendants' conduct, Plaintiff has sustained and continues to sustain substantial losses in earnings and other employment benefits.

82.     As a result of such wrongful conduct, Plaintiff has suffered and continues to suffer substantial humiliation, mental anguish, and emotional distress, on account of which Plaintiff is entitled to compensatory damages, the exact amount and nature of which exceeds the jurisdictional limits of this Court but is presently unknown to Plaintiff, who will either seek leave to amend this Complaint upon ascertaining such information or will prove the same at the time of trial.

83.     The acts of Defendants were intentional, malicious, wanton, oppressive, and fraudulent, with conscious disregard of Plaintiff's rights and with intent to vex, injure, punish, and annoy Plaintiff so as to cause the injuries sustained by Plaintiff to be within the meaning of California Civil Code § 3294. Plaintiff is therefore entitled to punitive and exemplary damages in an amount sufficient to punish and make an example of Defendants.

## SIXTH CAUSE OF ACTION

(Negligence Against Defendants and DOES 1 - 50)

84.     Plaintiff alleges and incorporates herein by this reference each and every allegation set forth in all previous paragraphs of this Complaint.

-16-
COMPLAINT

85.     Defendants, acting within the course of scope of the employer/employee relationship with Plaintiff, owed a duty of care to conduct their relations with Plaintiff in a reasonable manner and to avoid actions that would cause foreseeable harm to Plaintiff or any person/employee in Plaintiff's position.

86.     At all times mentioned herein, it is reasonably foreseeable that employees such as Plaintiff would suffer harm if forced to suffer discriminatory, harassing, and hostile actions from their employer, such as those committed by Defendants and/or others as mentioned herein, as agents and employees of Defendants.

87.     In committing the discriminatory, harassing, and hostile conduct described herein, Defendants breached a duty of care to Plaintiff, and did inflict harm upon Plaintiff.

88.     The actions of Defendants were a substantial factor in causing Plaintiff's harm.

89.     As a proximate result of Defendants' conduct, Plaintiff has sustained and continues to sustain substantial losses in earnings and other employment benefits.

90.     As a result of such wrongful conduct, Plaintiff has suffered and continues to suffer substantial humiliation, mental anguish, and emotional distress, on account of which Plaintiff is entitled to compensatory damages, the exact amount and nature of which exceeds the jurisdictional limits of this Court but is presently unknown to Plaintiff, who will either seek leave to amend this Complaint upon ascertaining such information or will prove the same at the time of trial.

91.     The acts of Defendants were intentional, malicious, wanton, oppressive, and fraudulent, with conscious disregard of Plaintiff's rights and with intent to vex, injure, punish, and annoy Plaintiff so as to cause the injuries sustained by Plaintiff to be within the meaning of California Civil Code § 3294. Plaintiff is therefore entitled to punitive and exemplary damages in an amount sufficient to punish and make an example of Defendants.

//

//

//

//

## SEVENTH CAUSE OF ACTION

(Unfair Business Practices in Violation of Business and Professions Code Section 17200 et seq. by Plaintiff against Fairlife and DOES 1-50)

92.     Plaintiff alleges and incorporates herein by this reference each and every allegation set forth in all previous paragraphs of this First Amended Complaint.

93.     California Business and Professions Code Section 17200 et seq. prohibits any unlawful, unfair, or fraudulent business practices. Section 17200 applies to any unlawful or unfair or fraudulent business act or practice, and each provides an independent basis for relief. (*Podolsky v. First Health Corp.*, (1996) 50 Cal.App.4th 632, 647). Violations of section 17200 need not be both fraudulent and unfair; the test under section 17200 is that a practice merely be unfair. (*Allied Grape Growers v. Bronco Wine Co.*, (1988) 203 Cal.App.3d 432, 451).

94.     An employer who violates anti-discrimination laws "implicates unfair competition" because it may gain an unfair competitive advantage over employers who comply with such laws. (*Herr v. Nestle U.S.A., Inc.*, (2003) 109 Cal.App.4th 779, 789 (employer engaging in age discrimination in violation of FEHA may have advantage over competitors who do not discriminate)).

95.     Defendants' conduct exhibiting discrimination against Plaintiff on the basis of Plaintiff's race and/or other protected characteristics constitutes an unlawful and unfair business practice as such conduct is prohibited under California law. All of the foregoing harmed Plaintiff and continues to harm Plaintiff.

96.     Defendants' course of conduct, act, and practice in violation of the California laws mentioned herein above constitutes separate and independent unfair business practices and violations of California Business and Professions Code § 17200 *et seq.*

97.     Pursuant to California Business & Professions Code § 17200 et seq., Plaintiff is entitled to restitution during a period that commences four years prior to the filing of this complaint; a permanent injunction requiring Defendants to pay all outstanding wages due to Plaintiff; an award of attorney's fees pursuant to California Code of Civil Procedure § 1021.5 and other applicable laws; and an award of costs.

## **PRAYER FOR RELIEF**

WHEREFORE, Plaintiff prays for judgment against Defendants, jointly and severally, as follows:

## **UNDER THE FIRST CAUSE OF ACTION**

1. For all compensatory, consequential, general, and special damages, subject to proof;
2. For punitive damages in an amount to be determined by the Court to be reasonable under the circumstances of this case;
3. For attorney's fees and costs pursuant to Government Code § 12965(b);
4. For interest according to law;
5. For costs of suit incurred herein; and
6. For such other and further relief that the Court determines to be just and proper.

## **UNDER THE SECOND CAUSE OF ACTION**

1. For all compensatory, consequential, general, and special damages, subject to proof;
2. For punitive damages in an amount to be determined by the Court to be reasonable under the circumstances of this case;
3. For attorney's fees and costs pursuant to Government Code § 12965(b);
4. For interest according to law;
5. For costs of suit incurred herein; and
6. For such other and further relief that the Court determines to be just and proper.

## **UNDER THE THIRD CAUSE OF ACTION**

1. For all compensatory, consequential, general, and special damages, subject to proof;
2. For punitive damages in an amount to be determined by the Court to be reasonable under the circumstances of this case;
3. For attorney's fees and costs pursuant to Government Code § 12965(b);
4. For interest according to law;

5. For costs of suit incurred herein; and

6. For such other and further relief that the Court determines to be just and proper.

## UNDER THE FOURTH CAUSE OF ACTION

1. For all compensatory, consequential, general, and special damages, subject to proof;

2. For punitive damages pursuant to Civil Code § 3294, subject to proof;

3. For interest according to law;

4. For costs of suit incurred herein; and

5. For such other and further relief that the Court determines to be just and proper.

## UNDER THE FIFTH CAUSE OF ACTION

1. For all compensatory, consequential, general, and special damages, subject to proof;

2. For punitive damages pursuant to Civil Code § 3294, subject to proof;

3. For interest according to law;

4. For costs of suit incurred herein; and

5. For such other and further relief that the Court determines to be just and proper.

## UNDER THE SIXTH CAUSE OF ACTION

1. For all compensatory, consequential, general, and special damages, subject to proof;

2. For punitive damages pursuant to Civil Code § 3294, subject to proof;

3. For costs of suit incurred herein; and

4. For such other and further relief that the Court determines to be just and proper.

## UNDER THE SEVENTH CAUSE OF ACTION

1. For restitution of all unpaid wages and monies due to Plaintiff and the disgorgement of profits from the unlawful business practices of Defendants, subject to proof;

2. For attorney's fees and costs pursuant to Code of Civil Procedure §1021.5;

3. Interest according to law;

4. For costs of suit incurred herein; and

5. For such other and further relief that the Court may deem just and proper.

Dated: April 28, 2022                    MARQUEE LAW GROUP, APC


By: _____
        Gary S. Brotman, Esq.
        Attorneys for Plaintiff Gregory Weston


### DEMAND FOR JURY TRIAL

PLAINTIFF hereby demands a jury trial with respect to all issues triable in the Complaint.


Dated: April 28, 2022                    MARQUEE LAW GROUP, APC


By: _____
        Gary S. Brotman, Esq.
        Attorneys for Plaintiff Gregory Weston

-21-
COMPLAINT

# Exhibit 2



**CT Corporation**
**Service of Process Notification**
05/06/2022
CT Log Number 541533780

## Service of Process Transmittal Summary

**TO:**   Jenna Feller
Shumaker Loop & Kendrick, LLP
1000 JACKSON ST
TOLEDO, OH 43604-5573

**RE:**   **Process Served in California**

**FOR:**   fairlife, LLC  (Domestic State: DE)

**ENCLOSED ARE COPIES OF LEGAL PROCESS RECEIVED BY THE STATUTORY AGENT OF THE ABOVE COMPANY AS FOLLOWS:**

| | |
|---|---|
| **TITLE OF ACTION:** | Re: GREGORY WESTON, an individual // To: fairlife, LLC |
| **CASE #:** | C2200884 |
| **NATURE OF ACTION:** | Employee Litigation - Wrongful Termination |
| **PROCESS SERVED ON:** | C T Corporation System, GLENDALE, CA |
| **DATE/METHOD OF SERVICE:** | By Process Server on 05/06/2022 at 02:00 |
| **JURISDICTION SERVED:** | California |
| **ACTION ITEMS:** | SOP Papers with Transmittal, via  UPS Next Day Air , 1ZX212780125576808 |
| **REGISTERED AGENT CONTACT:** | C T Corporation System
330 N BRAND BLVD
STE 700
GLENDALE, CA 91203
866-705-2500
CentralTeam2@wolterskluwer.com |

The information contained in this Transmittal is provided by CT for quick reference only. It does not constitute a legal opinion, and should not otherwise be relied on, as to the nature of action, the amount of damages, the answer date, or any other information contained in the included documents. The recipient(s) of this form is responsible for reviewing and interpreting the included documents and taking appropriate action, including consulting with its legal and other advisors as necessary. CT disclaims all liability for the information contained in this form, including for any omissions or inaccuracies that may be contained therein.



## PROCESS SERVER DELIVERY DETAILS

**Date:**                          Fri, May 6, 2022
**Server Name:**                   Victor Mendez

| Entity Served | FAIRLIFE, LLC |
|---|---|
| Case Number | C2200884 |
| Jurisdiction | CA |

| Inserts | | |
|---|---|---|
| | | |



CM-010

| ATTORNEY OR PARTY WITHOUT ATTORNEY (Name, State Bar number, and address): | FOR COURT USE ONLY |
|---|---|

Gary S. Brotman (287726)
Marquee Law Group, A.P.C.
9100 Wilshire Blvd., Suite 445 East Tower
Beverly Hills, CA 90212

TELEPHONE NO.: (310) 275-1844    FAX NO.: (310) 275-1801
ATTORNEY FOR (Name): gary@marqueelaw.com

SUPERIOR COURT OF CALIFORNIA, COUNTY OF Contra Costa
STREET ADDRESS: 725 Court Street
MAILING ADDRESS:
CITY AND ZIP CODE: Martinez, CA 94553
BRANCH NAME: Wakefield Taylor Courthouse

F I L E D
APR 29 2022
K. BIELER CLERK OF THE COURT
SUPERIOR COURT OF CALIFORNIA
COUNTY OF CONTRA COSTA
By_____ Deputy Clerk

CASE NAME:
Gregory Weston v. Fairlife, LLC, et al.

| CIVIL CASE COVER SHEET | | Complex Case Designation | CASE NUMBER: C22 - 00884 |
|---|---|---|---|
| ☑ Unlimited (Amount demanded exceeds $25,000) | ☐ Limited (Amount demanded is $25,000 or less) | ☐ Counter  ☐ Joinder  Filed with first appearance by defendant (Cal. Rules of Court, rule 3.402) | JUDGE: |
| | | | DEPT: |

*Items 1–6 below must be completed (see instructions on page 2).*

1. Check one box below for the case type that best describes this case:

**Auto Tort**
☐ Auto (22)
☐ Uninsured motorist (46)

**Other PI/PD/WD (Personal Injury/Property Damage/Wrongful Death) Tort**
☐ Asbestos (04)
☐ Product liability (24)
☐ Medical malpractice (45)
☐ Other PI/PD/WD (23)

**Non-PI/PD/WD (Other) Tort**
☐ Business tort/unfair business practice (07)
☐ Civil rights (08)
☐ Defamation (13)
☐ Fraud (16)
☐ Intellectual property (19)
☐ Professional negligence (25)
☐ Other non-PI/PD/WD tort (35)

**Employment**
☑ Wrongful termination (36)
☐ Other employment (15)

**Contract**
☐ Breach of contract/warranty (06)
☐ Rule 3.740 collections (09)
☐ Other collections (09)
☐ Insurance coverage (18)
☐ Other contract (37)

**Real Property**
☐ Eminent domain/Inverse condemnation (14)
☐ Wrongful eviction (33)
☐ Other real property (26)

**Unlawful Detainer**
☐ Commercial (31)
☐ Residential (32)
☐ Drugs (38)

**Judicial Review**
☐ Asset forfeiture (05)
☐ Petition re: arbitration award (11)
☐ Writ of mandate (02)
☐ Other judicial review (39)

**Provisionally Complex Civil Litigation (Cal. Rules of Court, rules 3.400–3.403)**
☐ Antitrust/Trade regulation (03)
☐ Construction defect (10)
☐ Mass tort (40)
☐ Securities litigation (28)
☐ Environmental/Toxic tort (30)
☐ Insurance coverage claims arising from the above listed provisionally complex case types (41)

**Enforcement of Judgment**
☐ Enforcement of judgment (20)

**Miscellaneous Civil Complaint**
☐ RICO (27)
☐ Other complaint (not specified above) (42)

**Miscellaneous Civil Petition**
☐ Partnership and corporate governance (21)
☐ Other petition (not specified above) (43)

2. This case ☐ is  ☑ is not  complex under rule 3.400 of the California Rules of Court. If the case is complex, mark the factors requiring exceptional judicial management:
   a. ☐ Large number of separately represented parties
   b. ☐ Extensive motion practice raising difficult or novel issues that will be time-consuming to resolve
   c. ☐ Substantial amount of documentary evidence
   d. ☐ Large number of witnesses
   e. ☐ Coordination with related actions pending in one or more courts in other counties, states, or countries, or in a federal court
   f. ☐ Substantial postjudgment judicial supervision

3. Remedies sought (check all that apply): a. ☑ monetary  b. ☐ nonmonetary; declaratory or injunctive relief  c. ☑ punitive
4. Number of causes of action (specify): 7
5. This case ☐ is  ☑ is not  a class action suit.
6. If there are any known related cases, file and serve a notice of related case. (You may use form CM-015.)

Date: April 28, 2022
Gary S. Brotman
_____          ►          _____
(TYPE OR PRINT NAME)                                    (SIGNATURE OF PARTY OR ATTORNEY FOR PARTY)

**NOTICE**
- Plaintiff must file this cover sheet with the first paper filed in the action or proceeding (except small claims cases or cases filed under the Probate Code, Family Code, or Welfare and Institutions Code). (Cal. Rules of Court, rule 3.220.) Failure to file may result in sanctions.
- File this cover sheet in addition to any cover sheet required by local court rule.
- If this case is complex under rule 3.400 et seq. of the California Rules of Court, you must serve a copy of this cover sheet on all other parties to the action or proceeding.
- Unless this is a collections case under rule 3.740 or a complex case, this cover sheet will be used for statistical purposes only.

Page 1 of 2

Form Adopted for Mandatory Use
Judicial Council of California
CM-010 [Rev. July 1, 2007]

**CIVIL CASE COVER SHEET**

Cal. Rules of Court, rules 2.30, 3.220, 3.400–3.403, 3.740;
Cal. Standards of Judicial Administration, std. 3.10
www.courtinfo.ca.gov

**SUM-100**

# SUMMONS
## *(CITATION JUDICIAL)*



**FOR COURT USE ONLY**
*(SOLO PARA USO DE LA CORTE)*

F I L E D

APR 29 2022

C. BRILON CLERK OF THE COURT
SUPERIOR COURT OF CALIFORNIA
COUNTY OF CONTRA COSTA
By: T. Schrade, Deputy Clerk

**NOTICE TO DEFENDANT:**
*(AVISO AL DEMANDADO):*
Fairlife, LLC, a Delaware corporation, and DOES 1 through 50, inclusive

**YOU ARE BEING SUED BY PLAINTIFF:**
*(LO ESTÁ DEMANDANDO EL DEMANDANTE):*
Gregory Weston, an individual

**NOTICE!** You have been sued. The court may decide against you without your being heard unless you respond within 30 days. Read the information below.

You have 30 CALENDAR DAYS after this summons and legal papers are served on you to file a written response at this court and have a copy served on the plaintiff. A letter or phone call will not protect you. Your written response must be in proper legal form if you want the court to hear your case. There may be a court form that you can use for your response. You can find these court forms and more information at the California Courts Online Self-Help Center (*www.courtinfo.ca.gov/selfhelp*), your county law library, or the courthouse nearest you. If you cannot pay the filing fee, ask the court clerk for a fee waiver form. If you do not file your response on time, you may lose the case by default, and your wages, money, and property may be taken without further warning from the court.

There are other legal requirements. You may want to call an attorney right away. If you do not know an attorney, you may want to call an attorney referral service. If you cannot afford an attorney, you may be eligible for free legal services from a nonprofit legal services program. You can locate these nonprofit groups at the California Legal Services Web site (*www.lawhelpcalifornia.org*), the California Courts Online Self-Help Center (*www.courtinfo.ca.gov/selfhelp*), or by contacting your local court or county bar association. **NOTE:** The court has a statutory lien for waived fees and costs on any settlement or arbitration award of $10,000 or more in a civil case. The court's lien must be paid before the court will dismiss the case.

*¡AVISO! Lo han demandado. Si no responde dentro de 30 días, la corte puede decidir en su contra sin escuchar su versión. Lea la información a continuación.*

*Tiene 30 DÍAS DE CALENDARIO después de que le entreguen esta citación y papeles legales para presentar una respuesta por escrito en esta corte y hacer que se entregue una copia al demandante. Una carta o una llamada telefónica no lo protegen. Su respuesta por escrito tiene que estar en formato legal correcto si desea que procesen su caso en la corte. Es posible que haya un formulario que usted pueda usar para su respuesta. Puede encontrar estos formularios de la corte y más información en el Centro de Ayuda de las Cortes de California (www.sucorte.ca.gov), en la biblioteca de leyes de su condado o en la corte que le quede más cerca. Si no puede pagar la cuota de presentación, pida al secretario de la corte que le dé un formulario de exención de pago de cuotas. Si no presenta su respuesta a tiempo, puede perder el caso por incumplimiento y la corte le podrá quitar su sueldo, dinero y bienes sin más advertencia.*

*Hay otros requisitos legales. Es recomendable que llame a un abogado inmediatamente. Si no conoce a un abogado, puede llamar a un servicio de remisión a abogados. Si no puede pagar a un abogado, es posible que cumpla con los requisitos para obtener servicios legales gratuitos de un programa de servicios legales sin fines de lucro. Puede encontrar estos grupos sin fines de lucro en el sitio web de California Legal Services, (www.lawhelpcalifornia.org), en el Centro de Ayuda de las Cortes de California, (www.sucorte.ca.gov) o poniéndose en contacto con la corte o el colegio de abogados locales. AVISO: Por ley, la corte tiene derecho a reclamar las cuotas y los costos exentos por imponer un gravamen sobre cualquier recuperación de $10,000 ó más de valor recibida mediante un acuerdo o una concesión de arbitraje en un caso de derecho civil. Tiene que pagar el gravamen de la corte antes de que la corte pueda desechar el caso.*

| The name and address of the court is: *(El nombre y dirección de la corte es):* Wakefield Taylor Courthouse 725 Court Street Martinez, CA 94553 | CASE NUMBER: *(Número del Caso):* C22 - 00884 - |
|---|---|

The name, address, and telephone number of plaintiff's attorney, or plaintiff without an attorney, is:
*(El nombre, la dirección y el número de teléfono del abogado del demandante, o del demandante que no tiene abogado, es):*

Gary S. Brotman (287726); Marquee Law Group, A.P.C., 9100 Wilshire Blvd., Suite 445 East Tower, Beverly Hills, CA 90212; T: (310) 275-1844

| DATE: ~~April 28, 2022~~   APR 29 2022 *(Fecha)* | Clerk, by   T. Schrade *(Secretario)* | , Deputy *(Adjunto)* |
|---|---|---|

*(For proof of service of this summons, use Proof of Service of Summons (form POS-010).)*
*(Para prueba de entrega de esta citatión use el formulario Proof of Service of Summons, (POS-010)).*

**NOTICE TO THE PERSON SERVED:** You are served

[SEAL]

1. ☐ as an individual defendant.
2. ☐ as the person sued under the fictitious name of *(specify):*
3. ☒ on behalf of *(specify):* **Fairlife, LLC., a Delaware corporation**

under: ☒ CCP 416.10 (corporation)  ☐ CCP 416.60 (minor)
☐ CCP 416.20 (defunct corporation)  ☐ CCP 416.70 (conservatee)
☐ CCP 416.40 (association or partnership)  ☐ CCP 416.90 (authorized person)
☐ other *(specify):*

4. ☐ by personal delivery on *(date):*

Page 1 of 1

| Form Adopted for Mandatory Use Judicial Council of California SUM-100 [Rev. July 1, 2009] | **SUMMONS** | Code of Civil Procedure §§ 412.20, 465 www.courtinfo.ca.gov |
|---|---|---|

1   F. Shawn Azizollahi (SBN 268116)
    shawn@marqueelaw.com
2   Poya Ghasri (SBN 268119)
    poya@marquelaw.com
3   Gary Brotman (SBN 287726)
    gary@marqueelaw.com
4
    MARQUEE LAW GROUP, A Professional Corporation
5   9100 Wilshire Boulevard, Suite 445 East Tower
    Beverly Hills, California 90212
6   (310) 275-1844 telephone
    (310) 275-1801 fax
7
8   Attorneys for Plaintiff
9   GREGORY WESTON

10

F I L E D

APR 29 2022

L. REYER CLERK OF THE COURT
SUPERIOR COURT OF CALIFORNIA
COUNTY OF CONTRA COSTA
By
P. EXANOR CLERK/DEPT

PER LOCAL RULE, THIS
CASE IS ASSIGNED TO
DEPT 01 , FOR ALL
PURPOSES

11              **SUPERIOR COURT OF THE STATE OF CALIFORNIA**          SUMMONS ISSUED

12                        **COUNTY OF CONTRA COSTA**

13

14   GREGORY WESTON, an individual;        )   Case No.:   C 2 2 - 0 0 8 8 4 -
                                           )
15              Plaintiff,                  )   **COMPLAINT FOR:**
          vs.                               )
16                                          )   1.  **Race Discrimination in Violation of Cal.**
                                            )       **Gov. Code Section 12900 et seq.;**
17                                          )   2.  **Harassment and Hostile Work**
     FAIRLIFE, LLC., a Delaware corporation; )      **Environment in Violation of Cal. Gov.**
18   JEFF LOBUS, an individual; and DOES 1  )       **Code Section 12900 et seq.;**
     through 50, inclusive.                 )   3.  **Failure to Prevent Discrimination and**
19                                          )       **Harassment in Violation of Cal. Gov.**
                                            )       **Code Section 12900 et seq.;**
20              Defendants.                 )   4.  **Wrongful Termination In Violation of**
                                            )       **Public Policy (Count I);**
21                                          )   5.  **Wrongful Termination In Violation of**
                                            )       **Public Policy (Count II);**
22                                          )   6.  **Negligence;**
                                            )   7.  **Unlawful Business Practices in Violation**
23                                          )       **of Bus. and Prof. Code Section 17200 et**
                                            )       **seq.**
24                                          )
                                            )
25                                          )

26

27

28

-1-
**COMPLAINT**

Plaintiff alleges:

## **PARTIES**

1.       Plaintiff, Gregory Weston ("Plaintiff" herein), is, and at all relevant times was, a resident of the County of Contra Costa, in the State of California.

2.       Plaintiff is informed and believes, and based thereon alleges, that Defendant Fairlife, LLC ("Fairlife") is, and at all relevant times was, a corporation organized and existing under the laws of the state of Delaware, qualified to do business in the state of California, with its principal place of business located at 1001 West Adams Street, Chicago, Illinois 60607.

3.       Plaintiff is informed and believes, and based thereon alleges, that Defendant Jeff Lobus is, and at all relevant times was, a resident of Cherokee County, Georgia. At all relevant times, Lobus was a Vice President of Field Sales for Fairlife and Plaintiff's direct supervisor, who controlled the wages, hours, and working conditions of Plaintiff.

4.       Plaintiff is ignorant of the true names and capacities of the defendants sued herein as DOES 1 through 50, inclusive, and therefore sues these defendants by such fictitious names. Plaintiff will amend this Complaint to allege the true names and capacities of said defendants when ascertained. Plaintiff is informed and believes, and based thereon allege, that each of the fictitiously named defendants is responsible in some manner for the occurrences herein alleged, and that Plaintiff's damages as herein alleged were proximately caused by said defendants. (Fairlife, Lobus, and DOES 1 through 50 shall collectively herein be referred to as "Defendants").

5.       At all relevant times herein, Defendants employed Plaintiff, within the meaning of California Government Code § 12926(d). Plaintiff was employed by Defendants and worked remotely for Defendants from Danville, California, until, as alleged herein, Plaintiff's employment was wrongfully terminated on or about December 13, 2021, for unlawful reasons in violation of the California Fair Employment and Housing Act ("FEHA," California Government Code § 12900 et seq.) and in violation of California public policy.

6.       Unless otherwise alleged in this Complaint, Plaintiff is informed and believes, and based thereon alleges, that each of the Defendants sued herein was, at all relevant times hereto,

the employer, owner, principal, franchisee, proxy, agent, employee, supervisor, representative, manager, managing agent, joint employer, and/or alter ego of the remaining Defendants, and was acting, at least in part, within the course and scope of such employment and agency, with express and implied permission, consent, and knowledge. The above Defendants, managing agents, and supervisors aided, abetted, condoned, permitted, willfully ignored, approved, authorized, and/or ratified the unlawful acts described herein, and each and every one of the acts and omissions alleged herein were performed by, and/or are attributable to all Defendants.

## JURISDICTION

7.      Plaintiff is informed and believes, and based thereon alleges, that at all times herein mentioned, Defendants, and each of them, were doing business in the State of California such that the exercise of jurisdiction by the Superior Court of California would not be inconsistent with the Constitution of the State of California and/or the United States of America.

8.      The Superior Court of California has jurisdiction over this action pursuant to California Code of Civil Procedure Section 410.10.

9.      The total amount in controversy for claims of Plaintiff is more than Twenty-Five Thousand Dollars ($25,000).

## VENUE

10.      Plaintiff is informed and believes, and based thereon alleges, that venue is proper in Contra Costa County because Defendants, and each of them, have conducted business within the County of Contra Costa, employed Plaintiff within the County of Contra Costa, and a substantial portion of the wrongful acts complained of occurred therein.

## GENERAL ALLEGATIONS

11.      Plaintiff alleges and incorporates herein by this reference each and every allegation set forth in all previous paragraphs of this Complaint.

-3-
COMPLAINT

*Plaintiff's Employment:*

12.     Defendants employed Plaintiff from in or about February 12, 2021 until on or about December 13, 2021 (the "Employment Period").

13.     Fairlife is a producer of dairy-based products, distributing its products throughout the United States. Per its website, Fairlife touts itself as an equal opportunity employer that does "not discriminate on the basis of race, color, religion, national origin, gender, age, disability, veteran status, or any other category protected by law." Unfortunately, this representation did not apply to Plaintiff's employment, as he was deprived of the very equal opportunity that Fairlife alleges to promote.

14.     Defendants employed Plaintiff as the Senior Director of Sales – West Zone throughout his employment. Plaintiff's responsibilities included, but were not limited to, overseeing sales of Fairlife products throughout the western region of the United States, developing marketing strategy, and managing a team of approximately five (5) salespersons spread throughout the western region.

15.     The offer letter signed by Plaintiff and Defendants on or about February 12, 2021 (the "Offer Letter"), provided Plaintiff with a starting base salary of $185,000, as well as benefits including, but not limited to, medical, dental, life insurance, vision, short-term disability, and long-term disability benefits. Plaintiff's employment further entitled him to a Leadership Incentive Award ("LIA") of up to 25% of his salary, and an annual merit bonus of up to another 30% of his salary, multiplied by the company's performance. Although the LIA states that it was a one-time payment, Plaintiff negotiated with Defendants to receive an annual LIA award.

*Plaintiff's Protected Status:*

16.     Plaintiff is a 48-year-old African American male in a workplace that promotes itself as diverse, however, is lacking such diversity amongst its Senior Director/VP/Executive level members. The demographic of Defendants' Senior Director/VP/Executive level members is dominated by Caucasian males, who are valued, hired, promoted, and retained without regard for merit. Plaintiff, the only African American member of the Senior Director sales team, was

-4-
COMPLAINT

wrongfully terminated for discriminatory reasons. Consequently, Plaintiff is a protected employee, as defined under California Law. (See. Cal. Gov't Code § 12940, *et seq.*).

***Plaintiff's Job Performance:***

17.     Plaintiff was an exemplary employee of Defendants throughout the entirety of the Employment Period. In fact, Plaintiff maintained the highest sales numbers of all the Senior Directors of Sales throughout his employment. Shortly prior to his wrongful termination, Plaintiff was informed by Defendants that he was set to receive the full amount of his LIA award and merit bonus for his excellent work. Per Plaintiff's calculations, this would have resulted in a total bonus of over $120,000.00.

18.     Moreover, Plaintiff's personnel file is devoid of any negative performance reviews, write ups, or complaints against him. The only mark against Plaintiff's record is the alleged violation of Fairlife's harassment and discrimination policy, curiously brought to Plaintiff's attention just prior to earning his LIA and merit bonus. The suspicious timing of this allegation resulted in Plaintiff's wrongful termination.

***Defendants' Discriminatory Adverse Employment Actions:***

19.     In order to obtain his employment with Defendants, Plaintiff was required to participate in a series of interviews. Plaintiff's initial interview took place with Lobus, his direct supervisor and a Caucasian male. Plaintiff then had a second interview with Defendant's Vice President of Commercialization Colin Schriver and Defendant's Vice President of National Accounts Mike DiPasquale. Plaintiff is informed and believes that Schriver and DiPasquale are both Caucasian males.

20.     Plaintiff then partook in a third and final interview with Defendant's former Chief Operating Officer Jeremy Faa, a Caucasian male, and Fairlife's now retired Chief Executive Officer Bill Kelly, another Caucasian male. It was after this series of interviews that Faa and Kelly approved the hiring of Plaintiff as a Senior Director of Sales and authorized the Offer Letter received by Plaintiff. It should be noted that Faa has since been replaced by Karim Yahi, a Caucasian male, and Kelly has been replaced by current CEO Tim Doelman. As one could guess, Doelman is a Caucasian male.

21.     As the Senior Director of Sales – West Zone, Plaintiff was one of four (4) members of the Senior Director team under Lobus. The Senior Director sales team was comprised of four (4) members covering the north, central, south, and west zones. The three (3) remaining members of the Senior Director sales team were all Caucasian (two male and one female).

22.     Moreover, Plaintiff was placed in charge of a sales team that was comprised of five (5) members, each of whom were Caucasian. The lack of diversity within the workplace was apparent on its face.

23.     In fact, the issue of diversity was addressed during Plaintiff's interview with Faa and Kelly, wherein they admitted that Fairlife needed to improve upon its diversity, particularly amongst its leadership. Plaintiff was seen as a good diversity hire. Faa would go on to set bi-monthly calls with Plaintiff wherein he would discuss Fairlife's need to improve upon the diversity of its employees, particularly those in leadership roles. Interestingly enough, Faa requested that Plaintiff, the only African American Senior Director/VP/Executive, take leadership in the initiative to improve diversity and equal opportunity in Fairlife's hiring practices. However, Faa would leave Fairlife in or about July 2021. No one else for Defendants would follow up with Plaintiff concerning any diversity initiatives.

24.     While the remaining Senior Director/VP/Executive team at Fairlife seemed to have little concern for diversity, or the lack thereof, Plaintiff's relationship with Lobus was particularly contentious. Lobus has been employed by Fairlife for approximately nine (9) years, and previously held Plaintiff's position as the Senior Director of Sales. As such, Lobus had worked side by side with each of the other three (3) Caucasian Senior Directors of Sales prior to his promotion. Lobus appeared to take issue with the fact that Plaintiff received the Senior Director position, as opposed to an internal promotion of one of his close associates, all of whom happened to be Caucasian men.

25.     As a result, Plaintiff's relationship with Lobus was not what he would have expected from a Vice President and direct supervisor. Lobus rarely reached out to Plaintiff to discuss work, and became instantly critical, if not angered, whenever Plaintiff would offer

1   opposition or constructive criticism to his approach to certain tasks/initiatives. In fact, Plaintiff

2   was forced to confront Lobus for yelling at Plaintiff in front of the other Senior Directors. This

3   only angered Lobus even further and created a larger divide in their professional relationship.

4       26.    Although Plaintiff worked remotely, Defendants held many virtual meetings, and

5   multiple events where Fairlife employees would meet in person. While these events were

6   intended to be for work-related purposes, they often involved extra-curricular activities such as

7   dinners, drinking, bars, etc. Lobus attended and/or orchestrated many of these extra-curricular

8   activities and was often the most senior employee at these events, setting the example for the

9   conduct of others.

10      27.    While Plaintiff saw no issue with these sorts of team bonding activities, Lobus

11  took the extra-curriculars a step further, engaging in more lewd and lascivious conduct. For

12  instance, Lobus would frequent strip-clubs with fellow employees. Lobus would also openly

13  discuss such ventures and joke about excessive drinking, being hung over, and made lewd and

14  sexually explicit comments in front of the female employees. Being that his relationship with

15  Lobus was somewhat tenuous, Plaintiff chose not to speak out against him for violating Fairlife's

16  code of conduct out of fear for retaliation.

17      28.    Nonetheless, Plaintiff continued to put his head down, work hard, and focus on

18  sales and supporting his sales team. Plaintiff had an excellent report with his sales team. Plaintiff

19  prided himself on having a (virtual) open door policy for his team to express their concerns,

20  whether it be business related or personal. Plaintiff believed that asking his team how they were

21  doing, learning about their families, and their likes and dislikes, and being open in return would

22  help foster a bond within his team. That bond would then encourage his team to work harder for

23  one another. Plaintiff's ideology proved highly successful, as evidenced by his team's sales

24  numbers during the Employment Period.

25      29.    Plaintiff was soon set to reap significant rewards from his success. In the

26  beginning of 2022, Plaintiff was set to receive his LIA, which he was informed would be the

27  maximum 25% of his salary. This would equate to a bonus of approximately $45,000. Plaintiff

28  was also informed that his excellent work, coupled with Fairlife's performance due in large part

-7-
COMPLAINT

1   to Plaintiff's sales numbers, was going to result in a full merit bonus of 30% of Plaintiff's salary

2   multiplied by the company's performance at 150% due to exceeding sales projections at the end

3   of the fiscal year. Per Plaintiff's calculations, this would have resulted in a merit bonus of over

4   $80,000.

5       30.     However, Plaintiff's success appeared to irk Lobus, particularly as Plaintiff

6   continued to outshine his fellow Senior Directors, each of whom were Caucasian. While Plaintiff

7   was aware of this tension, he did not expect the discriminatory and wrongful actions Defendants

8   would soon take against him.

9       31.     On or about December 13, 2021, Lobus requested a Zoom call with Plaintiff to

10  discuss some structural changes to the West zone. Once Plaintiff joined the call with Lobus,

11  Defendant's Human Resources Manager Shannon Brozewicz appeared on the call.

12      32.     Brozewicz and Lobus would go on to accuse Plaintiff of flirtatious behavior with

13  a member of his sales team. Although it was now December, mere weeks before Plaintiff's

14  bonuses would be earned, Brozewicz and Lobus claimed that the alleged misconduct took place

15  between April and July. Lobus claimed that an investigation was conducted, however this was

16  the first and only time Plaintiff had learned of this issue. In direct contravention to Respondent's

17  own policy for investigating such complaints, Plaintiff was never contacted about the allegations,

18  never interviewed, and never offered the opportunity to respond to the accusations.

19      33.     Despite being one of the most, if not the most successful Senior Director of Sales

20  for Defendants, and not having a negative review, prior complaint, or a single blemish to his

21  employment record, Defendants took this as their opportunity to terminate Plaintiff's

22  employment. Defendants cited an alleged violation of Fairlife's harassment and discrimination

23  policy. Plaintiff is informed and believes, and based thereon alleges, that the termination of his

24  employment was done to prevent the anticipated windfall of bonus earnings owed to Plaintiff,

25  and was an act of discrimination proliferated by Defendants in an effort to maintain the sanctity

26  of its Caucasian male leadership team.

27

28

1  ***Exhaustion of Administrative Remedies:***

2      34.     At all applicable times mentioned herein, Defendants regularly employed five or

3  more persons in California, bringing Defendants subject to the provisions of the Fair

4  Employment and Housing Act ("FEHA").

5      35.     Plaintiff has adequately exhausted all of his administrative remedies under the

6  FEHA and obtained a valid "right to sue" letter against Defendants from the Department of Fair

7  Employment and Housing.

8

9                    **FIRST CAUSE OF ACTION**

10          (Race Discrimination in Violation of Cal. Gov. Code Section 12900 et seq.

11                  by Plaintiff Against Fairlife and DOES 1 - 50)

12      36.     Plaintiff alleges and incorporates herein by this reference each and every

13  allegation set forth in all previous paragraphs of this Complaint.

14      37.     There existed an employer-employee relationship between Plaintiff and

15  Defendants during the Employment Period and, at all times herein, Plaintiff was duly qualified

16  and performed his employment duties in a satisfactory manner.

17      38.     Plaintiff is a 48-year-old African American male who was the only African

18  American Senior Director of Sales. As such, Plaintiff is a member of a protected class within the

19  meaning of FEHA and is entitled to its guarantees of full and equal access to employment.

20      39.     It is unlawful for an employer to discriminate against an employee based on the

21  employee's "race, religious creed, color, national origin, ancestry, physical disability, mental

22  disability, medical condition, genetic information, marital status, sex, gender, gender identity,

23  gender expression, age, sexual orientation, or military and veteran status of any person" or to

24  "discharge the person from employment… or to discriminate against the person in compensation

25  or in terms, conditions, or privileges of employment." (Cal. Gov't Code § 12940(a)).

26      40.     Plaintiff was, at all times herein, an "employee" covered by California

27  Government Code § 12900 et seq.

28

41.     The Company was at all relevant times hereto, an "employer" within the meaning of California Government Code § 12900 et seq.

42.     Plaintiff's race and/or other characteristics protected by FEHA were motivating factors in Defendant's adverse treatment of Plaintiff, as set forth in detail herein above.

43.     Plaintiff has performed competently and has gone above and beyond in his position, has suffered an adverse employment action, and the circumstances give rise to the discriminatory conduct from Defendants.

44.     As alleged herein above, Defendant's Senior Director/VP/Executive level employees are predominantly Caucasian men. Plaintiff's direct supervisor, Lobus, is a Caucasian male; Defendant's Vice President of Commercialization Colin Schriver and Vice President of National Accounts Mike DiPasquale are both Caucasian men; Defendants former COO Jeremy Faa and current COO Karim Yahi are Caucasian men; and Defendant's former CEO Bill Kelly and current CEO Tim Doelman are both Caucasian men. Even Plaintiff's five (5) person sales team was entirely Caucasian. The lack of diversity in Defendant's workforce was apparent on its face.

45.     Moreover, Defendants openly admitted to Plaintiff that there was a lack of diversity, particularly amongst those in leadership positions. Plaintiff was viewed as a good diversity hire. Defendants initially requested that Plaintiff, the only African American Senior Director/VP/Executive, take leadership in the initiative to improve diversity and equal opportunity in Fairlife's hiring practices. However, there was very little follow through on this initiative by Defendants.

46.     Although Plaintiff excelled in his role, he was looked upon with disfavor by Defendants, particularly by Lobus. Lobus appeared to take issue with the fact that Plaintiff received the Senior Director position, as opposed to an internal promotion of one of his close associates, all of whom happened to be Caucasian men. As a result, Plaintiff's relationship with Lobus was strained. Lobus rarely reached out to Plaintiff to discuss work, and became instantly critical, if not angered, whenever Plaintiff would offer opposition or constructive criticism to his approach to certain tasks/initiatives. In fact, Plaintiff was forced to confront Lobus for yelling at

Plaintiff in front of the other Senior Directors. This only angered Lobus even further and created a larger divide in their professional relationship. It was then Lobus who brought the outlandish allegations of flirtatious behavior against Plaintiff and terminated his employment.

47.     Defendants' conduct as alleged herein violated FEHA and Defendant committed unlawful employment practices, including, without limitation, discriminating against Plaintiff by materially affecting the terms and conditions of his employment, in whole or in part on the basis of Plaintiff's race and/or other protected characteristics in violation of California Government Code §12940(a).

48.     As a direct, foreseeable, and proximate result of Defendants' actions, Plaintiff has suffered and continues to suffer aggravation of his injuries, substantial losses in earnings and job benefits, humiliation, emotional distress, and physical and mental pain and anguish all to his damage in a sum according to proof at the time of trial.

49.     Plaintiff has incurred and continues to incur legal expenses and attorneys' fees pursuant to Government Code § 12965(b). Plaintiff is entitled to recover reasonable attorneys' fees and costs in an amount according to proof at the time of trial.

50.     Defendants' conduct was willful, knowing, malicious, intentional, and done in reckless disregard of the damaging consequences to Plaintiff. Defendants' conduct evidenced a conscious disregard of Plaintiff's rights. Plaintiff is thus entitled to recover actual, compensatory, punitive, and exemplary damages in amounts according to proof at time of trial.

## SECOND CAUSE OF ACTION

(Harassment and Hostile Work Environment in Violation of Cal. Gov. Code Section 12900 et seq. by Plaintiff Against Defendants and DOES 1 - 50)

51.     Plaintiff alleges and incorporates herein by this reference each and every allegation set forth in all previous paragraphs of this First Amended Complaint.

52.     There existed an employer-employee relationship between Plaintiff and Defendants during the Employment Period and, at all times herein, Plaintiff was duly qualified and performed his employment duties in a satisfactory manner.

-11-
COMPLAINT

53.     It is unlawful for an employer to harass an employee based on the employee's "race, religious creed, color, national origin, ancestry, physical disability, mental disability, medical condition, genetic information, marital status, sex, gender, gender identity, gender expression, age, sexual orientation, or military and veteran status of any person." Harassment of an employee "shall be unlawful if the entity, or its agents or supervisors, knows or should have known of this conduct and fails to take immediate and appropriate corrective action. (Cal. Gov't Code § 12940(j)).

54.     Plaintiff's race and/or other characteristics protected by FEHA were motivating factors in Defendants' adverse treatment of Plaintiff.

55.     In perpetrating the above-described action, the Defendants, and each of them, and/or their agents or employees engaged in a pattern and practice of unlawful harassment in violation of FEHA and California Government Code § 12940(j). Defendants, and each of them, harassed Plaintiff and/or failed to take immediate and appropriate corrective action. The harassment was sufficiently pervasive and severe as to alter the conditions of employment and create a hostile or abusive work environment.

56.     As a proximate result of Defendants' willful, knowing, and intentional discrimination against Plaintiff, Plaintiff has suffered and continues to suffer humiliation, emotional distress, and physical and mental pain and anguish, all to his damage in a sum according to proof at the time of trial.

57.     Plaintiff has incurred and continues to incur legal expenses and attorneys' fees pursuant to Government Code § 12965(b). Plaintiff is entitled to recover reasonable attorneys' fees and costs in an amount according to proof at the time of trial.

58.     Defendants' conduct was willful, knowing, malicious, and intentional and done in reckless disregard of the damaging consequences to Plaintiff. Defendants' conduct evidenced a conscious disregard of Plaintiff's rights. Plaintiff is thus entitled to recover actual, compensatory, punitive, and exemplary damages in amounts according to proof at time of trial.

## THIRD CAUSE OF ACTION

(Failure to Prevent Discrimination and Harassment in Violation of Cal. Gov. Code

Section 12900 et seq. by Plaintiff Against Fairlife and DOES 1 - 50)

59.     Plaintiff alleges and incorporates herein by this reference each and every allegation set forth in all previous paragraphs of this First Amended Complaint.

60.     There existed an employer-employee relationship between Plaintiff and Defendants during the Employment Period and, at all times herein, Plaintiff was duly qualified and performed his employment duties in a satisfactory manner.

61.     California law requires that employers take reasonable steps to prevent and correct wrongful behavior, including, but not limited to, harassing and discriminatory behavior. (*See* Gov. Code § 12940(k)) (It is unlawful "For an employer… to fail to take all reasonable steps necessary to prevent discrimination and harassment from occurring.")). Pursuant to this statute, Defendants were required to take all reasonable steps to prevent discrimination against Plaintiff based on Plaintiff's disability, gender, and/or other protected characteristics.

62.     As alleged herein above, Defendants failed to prevent their agents, supervisors, employees, and others from engaging in intentional actions that resulted in Plaintiff being treated less favorably because of Plaintiff's protected status (i.e., race). Rather than taking the initiative to improve diversity amongst those in leadership roles, Defendants chose to reverse course and wrongfully terminate Plaintiff's employment.

63.     Plaintiff is informed and believes, and based thereon alleges, that his race and/or other characteristics protected by FEHA were substantial motivating factors in the Defendants' adverse treatment of Plaintiff. Despite knowing its legal obligations, Defendants did nothing to prevent the rampant discrimination and harassment that Plaintiff suffered.

64.     Defendants knew, or reasonably should have known of the other Defendants and their agents, supervisors and employees' unlawful discrimination and harassment of Plaintiff, and that Defendants should have restrained such other Defendants from engaging in such conduct.

65.     As a direct, foreseeable, and proximate result of Defendants' actions, Plaintiff has suffered and continues to suffer aggravation of his injuries, substantial losses in earnings and job benefits, humiliation, emotional distress, and physical and mental pain and anguish all to his damage in a sum according to proof at the time of trial.

66.     Plaintiff has incurred and continues to incur legal expenses and attorneys' fees pursuant to Government Code § 12965(b). Plaintiff is entitled to recover reasonable attorneys' fees and costs in an amount according to proof at the time of trial.

67.     Defendants' conduct was willful, knowing, malicious, intentional, and done in reckless disregard of the damaging consequences to Plaintiff. Defendants' conduct evidenced a conscious disregard of Plaintiff's rights. Plaintiff is thus entitled to recover actual, compensatory, punitive, and exemplary damages in amounts according to proof at time of trial.

## FOURTH CAUSE OF ACTION

(Wrongful Termination in Violation of Public Policy (Count I)

by Plaintiff Against Fairlife and DOES 1 - 50)

68.     Plaintiff alleges and incorporates herein by this reference each and every allegation set forth in all previous paragraphs of this Complaint.

69.     At all relevant times herein, there existed an employer-employee relationship between Plaintiff and Defendants during the Employment Period.

70.     At all relevant times herein, Plaintiff was duly qualified and performed his employment duties in a satisfactory manner.

71.     At all relevant times to this action, Government Code § 12900 et seq. was in full force and effect and was binding upon Defendants. Defendants' termination of Plaintiff was in violation of fundamental public policies, articulated in the California Government Code, for the benefit of the public, including California Government Code Section 12900 et seq. California Government Code Section 12900 et seq.'s policy behind the prevention of discrimination protects Plaintiff and the public at large, is substantial and fundamental, was well established at the time of Plaintiff's discharge, and can form the basis for a common law wrongful termination

claim. (*Stevenson v. Superior Court (Huntington Mem. Hosp.)*, (1997) 16 Cal.4th 880, 889; *Phillips v. St. Mary Regional Center* (2002) 96 Cal.App.4th 218, 227).

72. Plaintiff's race and other protected characteristics were substantial motivating reasons for Defendants' decision to terminate Plaintiff's employment.

73. As a proximate result of Defendants' conduct, Plaintiff has sustained and continues to sustain substantial losses in earnings and other employment benefits.

74. As a result of such wrongful conduct, Plaintiff has suffered and continues to suffer substantial humiliation, mental anguish, and emotional distress, on account of which Plaintiff is entitled to compensatory damages, the exact amount and nature of which exceeds the jurisdictional limits of this Court but is presently unknown to Plaintiff, who will either seek leave to amend this Complaint upon ascertaining such information or will prove the same at the time of trial.

75. The acts of Defendants were intentional, malicious, wanton, oppressive, and fraudulent, with conscious disregard of Plaintiff's rights and with intent to vex, injure, punish, and annoy Plaintiff so as to cause the injuries sustained by Plaintiff to be within the meaning of California Civil Code § 3294. Plaintiff is therefore entitled to punitive and exemplary damages in an amount sufficient to punish and make an example of Defendants.

## FIFTH CAUSE OF ACTION

(Wrongful Termination in Violation of Public Policy (Count II)

by Plaintiff Against Fairlife and DOES 1 - 50)

76. Plaintiff alleges and incorporates herein by this reference each and every allegation set forth in all previous paragraphs of this Complaint.

77. At all relevant times herein, there existed an employer-employee relationship between Plaintiff and the Company during the Employment Period.

78. At all relevant times herein, Plaintiff was duly qualified and performed his employment duties in a satisfactory manner.

-15-
COMPLAINT

79.    A wrongful discharge in violation of public policy lies where an employee alleges that the employer terminated him to avoid paying earned wages and other amounts rightfully earned. (*Gould v. Maryland Sound Industries, Inc.*, (1995) 31 Cal.App.4th 1137). Defendants' acts constitute a wrongful termination in violation of public policy based upon its termination of Plaintiff's employment to avoid providing compensation owed to Plaintiff in the form of his LIA and merit bonus. Plaintiff was set to earn his LIA and merit bonus within weeks of his wrongful termination, as a result of a year's worth of hard work and dedication in improving Defendants' sales.

80.    Plaintiff's impending earned bonuses were a substantial motivating reason for Defendants' decision to terminate Plaintiff's employment.

81.    As a proximate result of Defendants' conduct, Plaintiff has sustained and continues to sustain substantial losses in earnings and other employment benefits.

82.    As a result of such wrongful conduct, Plaintiff has suffered and continues to suffer substantial humiliation, mental anguish, and emotional distress, on account of which Plaintiff is entitled to compensatory damages, the exact amount and nature of which exceeds the jurisdictional limits of this Court but is presently unknown to Plaintiff, who will either seek leave to amend this Complaint upon ascertaining such information or will prove the same at the time of trial.

83.    The acts of Defendants were intentional, malicious, wanton, oppressive, and fraudulent, with conscious disregard of Plaintiff's rights and with intent to vex, injure, punish, and annoy Plaintiff so as to cause the injuries sustained by Plaintiff to be within the meaning of California Civil Code § 3294. Plaintiff is therefore entitled to punitive and exemplary damages in an amount sufficient to punish and make an example of Defendants.

## SIXTH CAUSE OF ACTION

(Negligence Against Defendants and DOES 1 - 50)

84.    Plaintiff alleges and incorporates herein by this reference each and every allegation set forth in all previous paragraphs of this Complaint.

85.     Defendants, acting within the course of scope of the employer/employee relationship with Plaintiff, owed a duty of care to conduct their relations with Plaintiff in a reasonable manner and to avoid actions that would cause foreseeable harm to Plaintiff or any person/employee in Plaintiff's position.

86.     At all times mentioned herein, it is reasonably foreseeable that employees such as Plaintiff would suffer harm if forced to suffer discriminatory, harassing, and hostile actions from their employer, such as those committed by Defendants and/or others as mentioned herein, as agents and employees of Defendants.

87.     In committing the discriminatory, harassing, and hostile conduct described herein, Defendants breached a duty of care to Plaintiff, and did inflict harm upon Plaintiff.

88.     The actions of Defendants were a substantial factor in causing Plaintiff's harm.

89.     As a proximate result of Defendants' conduct, Plaintiff has sustained and continues to sustain substantial losses in earnings and other employment benefits.

90.     As a result of such wrongful conduct, Plaintiff has suffered and continues to suffer substantial humiliation, mental anguish, and emotional distress, on account of which Plaintiff is entitled to compensatory damages, the exact amount and nature of which exceeds the jurisdictional limits of this Court but is presently unknown to Plaintiff, who will either seek leave to amend this Complaint upon ascertaining such information or will prove the same at the time of trial.

91.     The acts of Defendants were intentional, malicious, wanton, oppressive, and fraudulent, with conscious disregard of Plaintiff's rights and with intent to vex, injure, punish, and annoy Plaintiff so as to cause the injuries sustained by Plaintiff to be within the meaning of California Civil Code § 3294. Plaintiff is therefore entitled to punitive and exemplary damages in an amount sufficient to punish and make an example of Defendants.

//
//
//
//

## SEVENTH CAUSE OF ACTION

(Unfair Business Practices in Violation of Business and Professions Code Section 17200 et seq. by Plaintiff against Fairlife and DOES 1-50)

92.    Plaintiff alleges and incorporates herein by this reference each and every allegation set forth in all previous paragraphs of this First Amended Complaint.

93.    California Business and Professions Code Section 17200 et seq. prohibits any unlawful, unfair, or fraudulent business practices. Section 17200 applies to any unlawful or unfair or fraudulent business act or practice, and each provides an independent basis for relief. (*Podolsky v. First Health Corp.*, (1996) 50 Cal.App.4th 632, 647). Violations of section 17200 need not be both fraudulent and unfair; the test under section 17200 is that a practice merely be unfair. (*Allied Grape Growers v. Bronco Wine Co.*, (1988) 203 Cal.App.3d 432, 451).

94.    An employer who violates anti-discrimination laws "implicates unfair competition" because it may gain an unfair competitive advantage over employers who comply with such laws. (*Herr v. Nestle U.S.A., Inc.*, (2003) 109 Cal.App.4th 779, 789 (employer engaging in age discrimination in violation of FEHA may have advantage over competitors who do not discriminate)).

95.    Defendants' conduct exhibiting discrimination against Plaintiff on the basis of Plaintiff's race and/or other protected characteristics constitutes an unlawful and unfair business practice as such conduct is prohibited under California law. All of the foregoing harmed Plaintiff and continues to harm Plaintiff.

96.    Defendants' course of conduct, act, and practice in violation of the California laws mentioned herein above constitutes separate and independent unfair business practices and violations of California Business and Professions Code § 17200 *et seq.*

97.    Pursuant to California Business & Professions Code § 17200 et seq., Plaintiff is entitled to restitution during a period that commences four years prior to the filing of this complaint; a permanent injunction requiring Defendants to pay all outstanding wages due to Plaintiff; an award of attorney's fees pursuant to California Code of Civil Procedure § 1021.5 and other applicable laws; and an award of costs.

-18-
COMPLAINT

## **PRAYER FOR RELIEF**

WHEREFORE, Plaintiff prays for judgment against Defendants, jointly and severally, as follows:

### **UNDER THE FIRST CAUSE OF ACTION**

1. For all compensatory, consequential, general, and special damages, subject to proof;
2. For punitive damages in an amount to be determined by the Court to be reasonable under the circumstances of this case;
3. For attorney's fees and costs pursuant to Government Code § 12965(b);
4. For interest according to law;
5. For costs of suit incurred herein; and
6. For such other and further relief that the Court determines to be just and proper.

### **UNDER THE SECOND CAUSE OF ACTION**

1. For all compensatory, consequential, general, and special damages, subject to proof;
2. For punitive damages in an amount to be determined by the Court to be reasonable under the circumstances of this case;
3. For attorney's fees and costs pursuant to Government Code § 12965(b);
4. For interest according to law;
5. For costs of suit incurred herein; and
6. For such other and further relief that the Court determines to be just and proper.

### **UNDER THE THIRD CAUSE OF ACTION**

1. For all compensatory, consequential, general, and special damages, subject to proof;
2. For punitive damages in an amount to be determined by the Court to be reasonable under the circumstances of this case;
3. For attorney's fees and costs pursuant to Government Code § 12965(b);
4. For interest according to law;

5. For costs of suit incurred herein; and

6. For such other and further relief that the Court determines to be just and proper.

### UNDER THE FOURTH CAUSE OF ACTION

1. For all compensatory, consequential, general, and special damages, subject to proof;

2. For punitive damages pursuant to Civil Code § 3294, subject to proof;

3. For interest according to law;

4. For costs of suit incurred herein; and

5. For such other and further relief that the Court determines to be just and proper.

### UNDER THE FIFTH CAUSE OF ACTION

1. For all compensatory, consequential, general, and special damages, subject to proof;

2. For punitive damages pursuant to Civil Code § 3294, subject to proof;

3. For interest according to law;

4. For costs of suit incurred herein; and

5. For such other and further relief that the Court determines to be just and proper.

### UNDER THE SIXTH CAUSE OF ACTION

1. For all compensatory, consequential, general, and special damages, subject to proof;

2. For punitive damages pursuant to Civil Code § 3294, subject to proof;

3. For costs of suit incurred herein; and

4. For such other and further relief that the Court determines to be just and proper.

### UNDER THE SEVENTH CAUSE OF ACTION

1. For restitution of all unpaid wages and monies due to Plaintiff and the disgorgement of profits from the unlawful business practices of Defendants, subject to proof;

2. For attorney's fees and costs pursuant to Code of Civil Procedure §1021.5;

3. Interest according to law;

4. For costs of suit incurred herein; and

5. For such other and further relief that the Court may deem just and proper.


Dated: April 28, 2022                    MARQUEE LAW GROUP, APC


By: _____
    Gary S. Brotman, Esq.
    Attorneys for Plaintiff Gregory Weston


## DEMAND FOR JURY TRIAL

PLAINTIFF hereby demands a jury trial with respect to all issues triable in the Complaint.


Dated: April 28, 2022                    MARQUEE LAW GROUP, APC


By: _____
    Gary S. Brotman, Esq.
    Attorneys for Plaintiff Gregory Weston

-21-
COMPLAINT

## Superior Court of California, Contra Costa County

CV - Martinez-Wakefield Taylor Courthouse
725 Court Street
Martinez CA 94553
925-608-1000
www.cc-courts.org



K. Bieker
Court Executive Officer

| CASE NAME: | CASE NUMBER: |
|---|---|
| GREGORY WESTON VS. FAIRLIFE, LLC | C22-00884 |

1. NOTICE IS HEREBY GIVEN THAT A CASE MANAGEMENT CONFERENCE IS SET IN THE ABOVE ENTITLED CASE AND WILL BE HELD IN THIS COURT ON:

| HEARING DATE: | HEARING TIME: | HEARING LOCATION: |
|---|---|---|
| 08/26/2022 | 8:30 AM | DEPARTMENT 09 |
| | | 725 COURT ST  RM 305  MARTINEZ, CA 94553 |

THIS FORM, A COPY OF THE NOTICE TO PLAINTIFFS, THE ADR INFORMATION SHEET, A BLANK CASE MANAGEMENT CONFERENCE QUESTIONNAIRE, AND A BLANK STIPULATION FORM ARE TO BE SERVED ON OPPOSING PARTIES.  ALL PARTIES SERVED WITH SUMMONS AND COMPLAINT/CROSS-COMPLAINT OR THEIR ATTORNEY OF RECORD MUST APPEAR.

2. YOU MAY STIPULATE TO AN EARLIER CASE MANAGEMENT CONFERENCE. IF ALL PARTIES AGREE TO AN EARLY CASE MANAGEMENT CONFERENCE, PLEASE CONTACT THE COURT CLERK'S OFFICE AT (925)608-1000 FOR UNLIMITED CIVIL AND LIMITED CIVIL CASES FOR ASSIGNMENT OF AN EARLIER DATE.

3. YOU MUST BE FAMILIAR WITH THE CASE AND BE FULLY PREPARED TO PARTICIPATE EFFECTIVELY IN THE CASE MANAGEMENT CONFERENCE AND TO DISCUSS THE SUITABILITY OF THIS CASE FOR THE EASE PROGRAM, PRIVATE MEDIATION, BINDING OR NON-BINDING ARBITRATION, AND/OR USE OF A SPECIAL MASTER.

4. AT ANY CASE MANAGEMENT CONFERENCE THE COURT MAY MAKE PRETRIAL ORDERS INCLUDING THE FOLLOWING:
   a) AN ORDER ESTABLISHING A DISCOVERY SCHEDULE
   b) AN ORDER REFERRING THE CASE TO ARBITRATION
   c) AN ORDER TRANSFERRING THE CASE TO LIMITED JURISDICTION
   d) AN ORDER DISMISSING FICTITIOUS DEFENDANTS
   e) AN ORDER SCHEDULING EXCHANGE OF EXPERT WITNESS INFORMATION
   f) AN ORDER SETTING SUBSEQUENT CONFERENCE AND THE TRIAL DATE
   g) AN ORDER CONSOLIDATING CASES
   h) AN ORDER SEVERING TRIAL OF CROSS-COMPLAINTS OR BIFURCATING ISSUES
   i) AN ORDER DETERMINING WHEN DEMURRERS AND MOTIONS WILL BE FILED

### SANCTIONS

IF YOU DO NOT FILE THE CASE MANAGEMENT CONFERENCE QUESTIONNAIRE OR ATTEND THE CASE MANAGEMENT CONFERENCE OR PARTICIPATE EFFECTIVELY IN THE CONFERENCE, THE COURT MAY IMPOSE SANCTIONS (INCLUDING DISMISSAL OF THE CASE AND PAYMENT OF MONEY).

### SUPERIOR COURT OF CALIFORNIA, CONTRA COSTA COUNTY

I DECLARE UNDER PENALTY OF PERJURY THAT I AM NOT A PARTY TO THE WITHIN ACTION OR PROCEEDING; THAT ON THE DATE BELOW INDICATED, I SERVED A COPY OF THE FOREGOING NOTICE BY DEPOSITING SAID COPY ENCLOSED IN A SEALED ENVELOPE WITH POSTAGE THEREON FULLY PREPAID IN THE UNITED STATES MAIL AT MARTINEZ, CALIFORNIA AS INDICATED ABOVE.

DATE:  4/29/2022

BY: _____
T. SCHRADER, DEPUTY CLERK

*Superior Court of California, County of Contra Costa*

# UNLIMITED JURISDICTION
## Civil Actions
## PACKET

### What you will find in this packet:

- **Notice To Plaintiffs** (CV-655a-INFO)

- **Notice To Defendants** (CV-655d-INFO)

- **ADR Case Management Stipulation and Order** (CV-655b)

- **Case Management Statement** (CM-110)

- **Alternative Dispute Resolution (ADR) Information** (CV-655c-INFO)

*You Can Get Court Forms FREE at: www.cc-courts.org/forms*

## Superior Court of California, County of Contra Costa

## NOTICE TO PLAINTIFFS
### In Unlimited Jurisdiction Civil Actions

### AFTER YOU FILE YOUR COURT CASE:

1. **Have the forms the clerk gives you served on all defendants in this case:**

   a. The Complaint

   b. The Summons

   c. The Notice of Case Management Conference (shows hearing date and time)

   d. The Notice to Defendants. (Local Court Form CV-655d-INFO)

   e. Blank: Case Management Statement (Judicial Council Form CM-110)

   f. Blank: Stipulation and Order to Attend ADR and Delay First Case Management Conference 90 Days (Local Court Form CV-655b)

   g. Alternative Dispute Resolution (ADR) Information (Local Court Form CV-655c-INFO)

2. **Within 60 days of the date you filed the complaint you must prove that the forms have been served on (delivered to) the defendants correctly** by filing the *Proof of Service* form (POS-010) (completed by the person who did the service) with the court.

3. **Go to the case management conference on the date indicated on** The Notice of Case Management Conference.

4. **Consider using mediation, arbitration, or neutral case evaluation (ADR) to resolve the dispute.** All parties must answer questions about ADR on the *Case Management Statement* form. For more information, see the enclosed ADR information. Visit www.cc-courts.org/adr, or email adrweb@contracosta.courts.ca.gov

5. **You may delay the first case management conference while you try to resolve the dispute in ADR.** If all parties agree to use ADR, complete and file the *Stipulation and Order to Attend ADR and Continue First Case Management Conference 90 Days* form to tell the court you want to use this option.

All civil actions (except juvenile, probate, family, unlawful detainer, extraordinary writ, and asset forfeiture[1]) and personal injury cases where a party is claiming damages[2] must meet the Civil Trial Delay Reduction time limits for filing documents and moving their cases forward. These time limits are listed in California Rule of Court 3.110 and Local Court Rules, Title Three. If parties miss these deadlines, a judge might issue an order (*Order to Show Cause*) for them to explain in court why they should not have to pay a fine or have their case dismissed.

### VIEW LOCAL COURT RULES AT: (WWW.CC-COURTS.ORG/RULES)

---

[1] *Health and Safety Code § 1470 et seq.*

[2] *Including claims for emotional distress and/or wrongful death.*

CIVIL Instructions
CV-655d-INFO   Rev. 8/2018

**Superior Court of California, County of Contra Costa**

# NOTICE TO DEFENDANTS

In Unlimited Jurisdiction Civil Actions

**YOU ARE BEING SUED.** The packet you have been served should contain:

a. The Summons

b. The Complaint

c. The Notice of Case Management (shows hearing date and time)

d. Blank: Case Management Statement (Judicial Council Form CM-110)

e. Blank: Stipulation and Order to Attend ADR and Delay First Case Management Conference 90 Days (Local Court Form CV-655b)

f. Alternative Dispute Resolution (ADR) Information (Local Court Form CV-655c-INFO)

---

 **WHAT DO I DO NOW?** 

**You must:**

1. **Prepare your response**   YOU COULD LOSE YOUR CASE—even before it is heard by a judge or before you can defend yourself, if you do not prepare and file a response on time. See the other side of this page for types of responses you can prepare.

2. **Complete the** *Case Management Statement (CM-110)*

3. **File and serve your court papers on time**   Once your court forms are complete, you must file 1 original and 2 copies of the forms at court. An adult who is NOT involved in your case must serve one set of forms on the Plaintiff. If you were served in person you must file your response in 30 days. If the server left a copy of the papers with an adult living at your home or an adult in charge at your work or you received a copy by mail you must file your response in 40 days.

4. **Prove you served your court papers on time**   by having your server complete a *Proof of Service, (Judicial Council form POS-040)*, that must be filed at the court within 60 days.

5. **Go to court** on the date and time given in the *Notice of Case Management Conference.*

6. **Consider trying to settle your case before trial**   If you and the other party to the case can agree to use mediation, arbitration or neutral case evaluation, the *Stipulation and Order to Attend ADR and Delay First Case Management Conference 90 Days* can be filed with your other papers. For more information read the enclosed ADR information, visit www.cc-courts.org/adr, or email adrweb@contracosta.courts.ca.gov.

**IMPORTANT! The court recommends consulting an attorney for all or part of your case. While you may represent yourself, lawsuits can be complicated, and the court cannot give you legal advice.**

---

**COURT FEES:** You must pay court fees the first time you file your papers.  If you also file a motion, you must pay another fee.  If you cannot afford the fees, you may ask the court to waive (allow you not to pay) fees. Use Judicial Council forms FW-001-INFO [information sheet]; FW-001 [application]; and FW-003 [order].

**COURT FORMS:** Buy forms at the Law Library (1020 Ward Street, Martinez, CA) or download them for free at: www.courtinfo.ca.gov/forms/

## WHAT KIND OF RESPONSES CAN I FILE?

1. If you disagree with some or all of what the plaintiff says in the complaint because you believe, or know it is not true, you can file an ANSWER.
2. If you have a claim in the same case against the plaintiff, you may file a CROSS-COMPLAINT.
3. If you want to ask the court to do something on your behalf, you may file a MOTION *(See TYPES OF MOTIONS below)*

## HOW DO I PREPARE AN ANSWER?

There are two kinds of Answers you can use, depending on whether the Complaint was verified. You can tell if a Complaint is verified because it says "Verified Complaint" and/or has a signed oath on the last page.

**For complaints that are NOT verified:**

Use Judicial Council form PLD-050 – General Denial

**For complaints that ARE verified:**

a. For personal injury, property damage, and wrongful death claims, use Judicial Council PLD-PI-003 (do not check number 2).

b. For contract claims, use Judicial Council PLD-C-010 (do not check number 3a).

c. Be sure to deny every claim with which you disagree. For example, you might write: *"I believe, or know, that the information in paragraph #__ is untrue/incorrect."* Continue your list until you have addressed each paragraph in the Complaint.

**NOTE:** The Judicial Council Answer forms have spaces for your affirmative defenses. Be sure to include them or you may not be able to use them later. To find out what your affirmative defenses might be, go to the law library and ask the librarian to help you find the information you need.

**If you want to file a Cross-Complaint, you must do so at the same time you file the Answer.**

a. For a personal injury, property damage, and/or wrongful death Cross-Complaint, use Judicial Council form PLD-PI-002.

b. For a contract Cross-Complaint, use Judicial Council PLD-C-001.

## TYPES OF MOTIONS

Written motions are documents that ask the court to do something. You may have to file an *Answer* at the same time. At this point in the case, you can only make Motions from the following list:

1. Demurrer *(the facts stated in the complaint are wrong, or the deadline to file the lawsuit has passed)*;
2. Motion to Strike *(the complaint is unclear; does not follow the law, "doesn't matter", etc.)*;
3. Motion to Transfer *(the complaint is in the wrong court or there's a more appropriate court)*;
4. Motion to Quash Service of Summons *(you were not legally served)*;
5. Motion to Stay *(put the case on hold)*; or
6. Motion to Dismiss *(stops the case)*.

   **NOTE: Motions are very complicated and you may want to hire a lawyer to help you.**

## WHERE CAN I GET MORE HELP?

- **Lawyer Referral Service:**   (925) 825-5700
- **Bay Area Legal Aid:**   (800) 551-5554
- **Contra Costa County Law Library**      Martinez:  (925) 646- 2783      Richmond:  (510) 374-3019
- **Ask the Law Librarian:**      www.247ref.org/portal/access_law3.cfm

# SUPERIOR COURT OF THE STATE OF CALIFORNIA
# IN AND FOR THE COUNTY OF CONTRA COSTA

_____

_____

Plaintiff(s) / Cross Plaintiff(s)

vs.

_____

_____

Defendant(s) / Cross Defendant(s)

### _ADR Case Management Stipulation and Order_
### _(Unlimited Jurisdiction Civil Cases)_

**CASE NO:** _____

---

► ALL PARTIES STIPULATING TO ADR AND DELAYING THEIR CASE MANAGEMENT CONFERENCE 90 DAYS MUST **SUBMIT** THE ORDER FOR THE JUDGE'S SIGNATURE AND FILE THIS FORM AT LEAST 15 DAYS **BEFORE** THEIR CASE MANAGEMENT CONFERENCE. (NOT AVAILABLE IN COMPLEX LITIGATION CASES.)

► PARTIES MUST ALSO SEND A COPY OF THIS **FILED** STIPULATION AND ORDER TO THE ADR OFFICE: EMAIL adrweb@contracosta.courts.ca.gov  FAX: (925) 608-2109  MAIL: P.O. BOX 911, MARTINEZ, CA 94553

---

Counsel and all parties agree to delay their case management conference 90 days to attend ADR and complete pre-ADR discovery as follows:

1. Selection and scheduling for Alternative Dispute Resolution (ADR):
   a. The parties have agreed to ADR as follows:
      i. ❑ Mediation  (❑ Court-connected ❑ Private)
      ii. ❑ Arbitration  (❑ Judicial Arbitration (non-binding)  ☑ Private (non-binding)  ❑ Private (binding))
      iii. ❑ Neutral case evaluation
   b. The ADR neutral shall be selected by *(date)*: _____ __ *(no more than 14 days after filing this form)*
   c. ADR shall be completed by *(date)*: _____ *(no more than 90 days after filing this form)*
2. The parties will complete the following discovery plan:
   a. ❑ Written discovery:  (❑ Additional page(s) attached)
      i. ❑ Interrogatories to:
      ii. ❑ Request for Production of Documents to:
      iii. ❑ Request for Admissions to:
      iv. ❑ Independent Medical Evaluation of:
      v. ❑ Other:
   b. ❑ Deposition of the following parties or witnesses: (❑ Additional page(s) attached)
      i. _____
      ii. _____
      iii. _____
   c. ❑ No Pre-ADR discovery needed
3. The parties also agree: _____

4. Counsel and self-represented parties represent they are familiar with and will fully comply with all local court rules related to ADR as provided in Title Three; Chapter 5, will pay the fees associated with these services, and understand that if they do not, without good cause, comply with this stipulation and all relevant local court rules, they may be subject to sanctions.

| Counsel for Plaintiff *(print)* | Fax | Counsel for Defendant *(print)* | Fax |
|---|---|---|---|
| Signature | | Signature | |
| Counsel for Plaintiff *(print)* | Fax | Counsel for Defendant *(print)* | Fax |
| Signature | | Signature | |

---

Pursuant to the Stipulation of the parties, and subject to the *Case Management Order* to be filed, **IT IS SO ORDERED** that the Case Management Conference set for _____ is vacated and rescheduled for _____ at (8:30 a.m. / _____ ) **Plaintiff / Plaintiff's counsel must notify all parties of the new case management conference.**

**Dated:** _____        _____

**Judge of the Superior Court**

CM-110

| ATTORNEY OR PARTY WITHOUT ATTORNEY *(Name, State Bar number, and address):* | FOR COURT USE ONLY |
|---|---|

TELEPHONE NO.:                    FAX NO. *(Optional):*
E-MAIL ADDRESS *(Optional):*
ATTORNEY FOR *(Name):*

**SUPERIOR COURT OF CALIFORNIA, COUNTY OF**
STREET ADDRESS:
MAILING ADDRESS:
CITY AND ZIP CODE:
BRANCH NAME:

PLAINTIFF/PETITIONER:

DEFENDANT/RESPONDENT:

| **CASE MANAGEMENT STATEMENT** | CASE NUMBER: |
|---|---|
| *(Check one):*  ☐ **UNLIMITED CASE** (Amount demanded exceeds $25,000)   ☐ **LIMITED CASE** (Amount demanded is $25,000 or less) | |

**A CASE MANAGEMENT CONFERENCE** is scheduled as follows:

Date:                    Time:                    Dept.:          Div.:          Room:

Address of court *(if different from the address above):*

☐ Notice of Intent to Appear by Telephone, by *(name):*

**INSTRUCTIONS: All applicable boxes must be checked, and the specified information must be provided.**

1.  **Party or parties** *(answer one):*
    a. ☐ This statement is submitted by party *(name):*
    b. ☐ This statement is submitted jointly by parties *(names):*

2.  **Complaint and cross-complaint** *(to be answered by plaintiffs and cross-complainants only)*
    a. The complaint was filed on *(date):*
    b. ☐ The cross-complaint, if any, was filed on *(date):*

3.  **Service** *(to be answered by plaintiffs and cross-complainants only)*
    a. ☐ All parties named in the complaint and cross-complaint have been served, have appeared, or have been dismissed.
    b. ☐ The following parties named in the complaint or cross-complaint
        (1) ☐ have not been served *(specify names and explain why not):*
        (2) ☐ have been served but have not appeared and have not been dismissed *(specify names):*
        (3) ☐ have had a default entered against them *(specify names):*
    c. ☐ The following additional parties may be added *(specify names, nature of involvement in case, and date by which they may be served):*

4.  **Description of case**
    a. Type of case in  ☐ complaint   ☐ cross-complaint   *(Describe, including causes of action):*

Form Adopted for Mandatory Use
Judicial Council of California
CM-110 [Rev. July 1, 2011]

**CASE MANAGEMENT STATEMENT**

Page 1 of 5
Cal. Rules of Court,
rules 3.720–3.730
www.courts.ca.gov

CM-110

| PLAINTIFF/PETITIONER: | CASE NUMBER: |
|---|---|
| DEFENDANT/RESPONDENT: | |

4.   b.   Provide a brief statement of the case, including any damages. *(If personal injury damages are sought, specify the injury and damages claimed, including medical expenses to date [indicate source and amount], estimated future medical expenses, lost earnings to date, and estimated future lost earnings. If equitable relief is sought, describe the nature of the relief.)*

☐   *(If more space is needed, check this box and attach a page designated as Attachment 4b.)*

5.   **Jury or nonjury trial**
The party or parties request   ☐   a jury trial   ☐   a nonjury trial.   *(If more than one party, provide the name of each party requesting a jury trial):*

6.   **Trial date**
a.   ☐   The trial has been set for *(date):*
b.   ☐   No trial date has been set. This case will be ready for trial within 12 months of the date of the filing of the complaint *(if not, explain):*

c.   Dates on which parties or attorneys will not be available for trial *(specify dates and explain reasons for unavailability):*

7.   **Estimated length of trial**
The party or parties estimate that the trial will take *(check one):*
a.   ☐   days *(specify number):*
b.   ☐   hours (short causes) *(specify):*

8.   **Trial representation** *(to be answered for each party)*
The party or parties will be represented at trial   ☐   by the attorney or party listed in the caption   ☐   by the following:
a.   Attorney:
b.   Firm:
c.   Address:
d.   Telephone number:                                      f.   Fax number:
e.   E-mail address:                                         g.   Party represented:
☐   Additional representation is described in Attachment 8.

9.   **Preference**
☐   This case is entitled to preference *(specify code section):*

10.   **Alternative dispute resolution (ADR)**
a.   **ADR information package.** Please note that different ADR processes are available in different courts and communities; read the ADR information package provided by the court under rule 3.221 for information about the processes available through the court and community programs in this case.
(1)   For parties represented by counsel: Counsel   ☐   has   ☐   has not   provided the ADR information package identified in rule 3.221 to the client and reviewed ADR options with the client.
(2)   For self-represented parties: Party   ☐   has   ☐   has not   reviewed the ADR information package identified in rule 3.221.

b.   **Referral to judicial arbitration or civil action mediation** (if available).
(1)   ☐   This matter is subject to mandatory judicial arbitration under Code of Civil Procedure section 1141.11 or to civil action mediation under Code of Civil Procedure section 1775.3 because the amount in controversy does not exceed the statutory limit.
(2)   ☐   Plaintiff elects to refer this case to judicial arbitration and agrees to limit recovery to the amount specified in Code of Civil Procedure section 1141.11.
(3)   ☐   This case is exempt from judicial arbitration under rule 3.811 of the California Rules of Court or from civil action mediation under Code of Civil Procedure section 1775 et seq. *(specify exemption):*

CM-110

| PLAINTIFF/PETITIONER: | CASE NUMBER: |
|---|---|
| DEFENDANT/RESPONDENT: | |

10. c. Indicate the ADR process or processes that the party or parties are willing to participate in, have agreed to participate in, or have already participated in *(check all that apply and provide the specified information):*

| | The party or parties completing this form are willing to participate in the following ADR processes *(check all that apply):* | If the party or parties completing this form in the case **have agreed to participate in or have already completed an ADR process or processes,** indicate the status of the processes *(attach a copy of the parties' ADR stipulation):* |
|---|---|---|
| **(1) Mediation** | ☐ | ☐ Mediation session not yet scheduled<br>☐ Mediation session scheduled for *(date):*<br>☐ Agreed to complete mediation by *(date):*<br>☐ Mediation completed on *(date):* |
| **(2) Settlement conference** | ☐ | ☐ Settlement conference not yet scheduled<br>☐ Settlement conference scheduled for *(date):*<br>☐ Agreed to complete settlement conference by *(date):*<br>☐ Settlement conference completed on *(date):* |
| **(3) Neutral evaluation** | ☐ | ☐ Neutral evaluation not yet scheduled<br>☐ Neutral evaluation scheduled for *(date):*<br>☐ Agreed to complete neutral evaluation by *(date):*<br>☐ Neutral evaluation completed on *(date):* |
| **(4) Nonbinding judicial arbitration** | ☐ | ☐ Judicial arbitration not yet scheduled<br>☐ Judicial arbitration scheduled for *(date):*<br>☐ Agreed to complete judicial arbitration by *(date):*<br>☐ Judicial arbitration completed on *(date):* |
| **(5) Binding private arbitration** | ☐ | ☐ Private arbitration not yet scheduled<br>☐ Private arbitration scheduled for *(date):*<br>☐ Agreed to complete private arbitration by *(date):*<br>☐ Private arbitration completed on *(date):* |
| **(6) Other *(specify):*** | ☐ | ☐ ADR session not yet scheduled<br>☐ ADR session scheduled for *(date):*<br>☐ Agreed to complete ADR session by *(date):*<br>☐ ADR completed on *(date):* |

CM-110 [Rev. July 1, 2011]   **CASE MANAGEMENT STATEMENT**   Page 3 of 5

CM-110

| PLAINTIFF/PETITIONER: | CASE NUMBER: |
|---|---|
| DEFENDANT/RESPONDENT: | |

**11. Insurance**

a. ☐ Insurance carrier, if any, for party filing this statement *(name):*

b. Reservation of rights: ☐ Yes ☐ No

c. ☐ Coverage issues will significantly affect resolution of this case *(explain):*

**12. Jurisdiction**

Indicate any matters that may affect the court's jurisdiction or processing of this case and describe the status.

☐ Bankruptcy ☐ Other *(specify):*

Status:

**13. Related cases, consolidation, and coordination**

a. ☐ There are companion, underlying, or related cases.

(1) Name of case:

(2) Name of court:

(3) Case number:

(4) Status:

☐ Additional cases are described in Attachment 13a.

b. ☐ A motion to ☐ consolidate ☐ coordinate will be filed by *(name party):*

**14. Bifurcation**

☐ The party or parties intend to file a motion for an order bifurcating, severing, or coordinating the following issues or causes of action *(specify moving party, type of motion, and reasons):*

**15. Other motions**

☐ The party or parties expect to file the following motions before trial *(specify moving party, type of motion, and issues):*

**16. Discovery**

a. ☐ The party or parties have completed all discovery.

b. ☐ The following discovery will be completed by the date specified *(describe all anticipated discovery):*

| Party | Description | Date |
|---|---|---|

c. ☐ The following discovery issues, including issues regarding the discovery of electronically stored information, are anticipated *(specify):*

**CASE MANAGEMENT STATEMENT**

**CM-110**

| PLAINTIFF/PETITIONER: | CASE NUMBER: |
|---|---|
| DEFENDANT/RESPONDENT: | |

**17. Economic litigation**

    a. ☐ This is a limited civil case (i.e., the amount demanded is $25,000 or less) and the economic litigation procedures in Code of Civil Procedure sections 90-98 will apply to this case.

    b. ☐ This is a limited civil case and a motion to withdraw the case from the economic litigation procedures or for additional discovery will be filed *(if checked, explain specifically why economic litigation procedures relating to discovery or trial should not apply to this case):*

**18. Other issues**

    ☐ The party or parties request that the following additional matters be considered or determined at the case management conference *(specify):*

**19. Meet and confer**

    a. ☐ The party or parties have met and conferred with all parties on all subjects required by rule 3.724 of the California Rules of Court *(if not, explain):*

    b. After meeting and conferring as required by rule 3.724 of the California Rules of Court, the parties agree on the following *(specify):*

**20. Total number of pages attached** *(if any):* _____

I am completely familiar with this case and will be fully prepared to discuss the status of discovery and alternative dispute resolution, as well as other issues raised by this statement, and will possess the authority to enter into stipulations on these issues at the time of the case management conference, including the written authority of the party where required.

Date:

_____
(TYPE OR PRINT NAME)

▶ _____
(SIGNATURE OF PARTY OR ATTORNEY)

_____
(TYPE OR PRINT NAME)

▶ _____
(SIGNATURE OF PARTY OR ATTORNEY)

    ☐ Additional signatures are attached.



## CONTRA COSTA COUNTY SUPERIOR COURT
## ALTERNATIVE DISPUTE RESOLUTION (ADR) INFORMATION

All judges in the Civil Trial Delay Reduction Program agree that parties should consider using Alternative Dispute Resolution (ADR) to settle their cases. To tell the court you will use ADR:

- Choose ADR on the *Case Management Form* (CM-110);
- File a *Stipulation and Order to Attend ADR and Continue First Case Management Conference 90 Days* (local court form); or
- Agree to ADR at your first court appearance.

*Questions? Email adrweb@contracosta.courts.ca.gov or call (925) 608-2075*

## MEDIATION

Mediation is often faster and less expensive than going to trial. Mediators help people who have a dispute talk about ways they can settle their case. Parties email, fax or visit the ADR Programs office to get a list of mediators. After parties have agreed on a mediator, they must write a summary (5 pages or less) explaining the facts, legal arguments, and legal authority for their position. They must send this summary to the other parties and the mediator at least 5 court days before mediation starts.

ALL parties and attorneys must go to mediation. Mediation can be held whenever and wherever the parties and the mediator want, as long as they finish before the court deadline. In some kinds of court cases, parties have the chance to mediate in the courthouse on their trial day.

Most mediators begin by talking with the parties together, helping them focus on the important issues. The mediator may also meet with each party alone. Mediators often ask parties for their ideas about how to settle the case. Some mediators tell the parties how much money they think a case is worth - or tell them what they think might happen if the case went to trial. Other mediators help the parties decide these things for themselves. No matter what approach a mediator takes, decisions about settling a case can only be made when all the parties agree.

If the parties go through the court ADR program, mediators do not charge fees for the first half hour spent scheduling or preparing for mediation. They also do not charge fees for the first two hours of mediation. If parties need more time, they must pay the mediators regular fees. Some mediators ask for a deposit before mediation starts. Mediators who do this must give back whatever is left after counting the time he or she spent preparing for or doing the mediation. A party whose court fees have been waived (cancelled) may ask if their mediation fees or deposit can be waived.

If parties agree about how they will settle their case, they can choose to keep it private, write it up as a contract, or ask the judge to make it a court order. What parties say and agree to in mediation is confidential (private).

## PRIVATE MEDIATION

Private mediation works in the same way as judicial mediation, but the parties do not go through the ADR Programs office. Parties choose a mediator on their own, and pay the mediator's normal fees.

## JUDICIAL ARBITRATION (non-binding)

In judicial arbitration, an independent attorney (arbitrator) looks at the evidence, listens to the parties and their witnesses, and decides how the case will be settled. Judicial arbitration is less formal than court. Parties email, fax or visit the ADR Programs office to get a list of arbitrators. If they cannot agree on an arbitrator, the court will assign one. The judge can send cases to arbitration if there is less than $50,000 in dispute. The person who started the court case can make sure the case goes to arbitration if they agree to limit the amount they are asking for to $50,000. Parties can also agree they want to use judicial arbitration. The arbitrator must send their decision (award) to the court within 10 days of the last hearing. The award becomes a court judgment unless a party asks the court to review the case within 60 days. Parties must use the ADR-102 form to ask for a new court hearing (called a trial de novo.) Judicial arbitrators charge $150 per case or per day.

## PRIVATE ARBITRATION (non-binding and binding)

Private, non-binding arbitration is the same as judicial arbitration, except that the parties do not go through the ADR Programs office to choose an arbitrator, and the arbitrator's award will not become a judgment of the court unless all parties agree. Parties must pay the arbitrator's normal fees.

Binding arbitration is different from judicial or private non-binding arbitration because the arbitrator's decision is final. Parties give up their right to have a judge review their case later (except for reasons listed in California Code of Civil Procedure, Section 1286.2.) Binding arbitration rules are listed in California Code of Civil Procedure, Sections 1280-1288.8. Parties may also agree any time before the judge has made a decision that ends the case to switch to binding arbitration. Parties choose the arbitrator on their own, and must pay the arbitrator's normal (not $150) fees.

## SETTLEMENT MENTOR CONFERENCE

Settlement mentors are independent, experienced trial attorneys that a judge has assigned to help parties look for ways to settle their case. The conference is free and is held in the courthouse. It is often held on the morning of trial, but it can be scheduled anytime. These conferences usually last two or three hours. Parties do not present evidence and do not call witnesses. Parties can ask the settlement mentor to keep some information confidential (private) from the other party, but not from the judge. The settlement mentor can share any information with the judge, or involve the judge in settlement discussions. All principals, clients, and claims representatives must attend the settlement mentor conference.

## NEUTRAL CASE EVALUATION

In neutral case evaluation, an independent attorney (evaluator) reviews documents and listens to each party's side of the case. The evaluator then tells the parties what they think could happen if the case went to trial. Many people use the evaluator's opinion to reach an agreement on their own, or use this information later in mediation or arbitration to settle their case.

Parties email, fax or visit the ADR Programs office to get a list of evaluators. After parties have agreed on an evaluator, they must write a summary (5 pages or less) explaining the facts, legal arguments, and legal authority for their position. They must send this summary to the other parties and the evaluator at least 5 court days before evaluation starts. ALL parties and their attorneys must go to neutral case evaluation. The evaluation can be held whenever and wherever the parties and the evaluator want, as long as they finish before the court deadline. If the parties go through the court's ADR program, evaluators do not charge any fees for the first half hour spent scheduling or preparing for the evaluation conference. They also do not charge fees for the first two hours of the evaluation. If parties need more time, they must pay that evaluators regular fees. Some evaluators ask for a deposit before evaluation starts. Evaluators who do this must give back whatever is left after counting the time he or she spent preparing for or doing the evaluation. A party whose court fees have been waived (cancelled) may ask if their evaluation fees or deposit can be waived.

## TEMPORARY JUDGE

Some parties want a trial, but want to choose who will decide the case and when the trial will take place. Parties can agree on an attorney that they want the court to appoint as a temporary judge for their case. (See Article 6, Section 21 of the State Constitution and Rule 2.830 of the California Rules of Court.) Temporary judges have nearly the same authority as a superior court judge to conduct a trial and make decisions. As long as the parties meet the court deadline, they can schedule the trial at their own and the temporary judge's convenience.

Each of the temporary judges on the court's panel has agreed to serve at no charge for up to 5 court days. If the parties need more time, they must pay that person's regular fees. All parties and their lawyers must attend the trial, and provide a copy of all briefs or other court documents to the temporary judge at least two weeks before the trial. These trials are similar to other civil trials, but are usually held outside the court. The temporary judge's decision can be appealed to the superior court. There is no option for a jury trial. The parties must provide their own court reporter.

## SPECIAL MASTER

A special master is a private lawyer, retired judge, or other expert appointed by the court to help make day-to-day decisions in a court case. The special master's role can vary, but often includes making decisions that help the discovery (information exchange) process go more smoothly. He or she can make decisions about the facts in the case. Special masters can be especially helpful in complex cases. The trial judge defines what the special master can and cannot do in a court order.

Special masters often issue both interim recommendations and a final report to the parties and the court. If a party objects to what the special master decides or reports to the court, that party can ask the judge to review the matter. In general, the parties choose (by stipulation) whom they want the court to appoint as the special master, but there are times (see California Code of Civil Procedure Section 639), when the court may appoint a special master or referee without the parties agreement. The parties are responsible to pay the special master's regular fees.

## COMMUNITY MEDIATION SERVICES

Mediation Services are available through non-profit community organizations. These low-cost services are provided by trained volunteer mediators. For more information about these programs contact the ADR Program at adrweb@contracosta.courts.ca.gov

CM-010

| ATTORNEY OR PARTY WITHOUT ATTORNEY *(Name, State Bar number, and address):* | FOR COURT USE ONLY |
|---|---|

Gary S. Brotman (287726)
Marquee Law Group, A.P.C.
9100 Wilshire Blvd., Suite 445 East Tower
Beverly Hills, CA 90212
TELEPHONE NO.: (310) 275-1844    FAX NO.: (310) 275-1801
ATTORNEY FOR *(Name)*: gary@marqueelaw.com

FILED
APR 29 2022
K. PEDERSON, CLERK OF THE COURT
SUPERIOR COURT OF CALIFORNIA
COUNTY OF CONTRA COSTA
By: _____

SUPERIOR COURT OF CALIFORNIA, COUNTY OF Contra Costa
STREET ADDRESS: 725 Court Street
MAILING ADDRESS:
CITY AND ZIP CODE: Martinez, CA 94553
BRANCH NAME: Wakefield Taylor Courthouse

CASE NAME:
Gregory Weston v. Fairlife, LLC, et al.

| CIVIL CASE COVER SHEET | Complex Case Designation | CASE NUMBER: C 22 - 00884 |
|---|---|---|
| ✔ Unlimited  ☐ Limited | ☐ Counter  ☐ Joinder | |
| (Amount demanded exceeds $25,000) | (Amount demanded is $25,000 or less) | Filed with first appearance by defendant (Cal. Rules of Court, rule 3.402) | JUDGE:  DEPT: |

*Items 1–6 below must be completed (see instructions on page 2).*

1. Check **one** box below for the case type that best describes this case:

**Auto Tort**
☐ Auto (22)
☐ Uninsured motorist (46)
**Other PI/PD/WD (Personal Injury/Property Damage/Wrongful Death) Tort**
☐ Asbestos (04)
☐ Product liability (24)
☐ Medical malpractice (45)
☐ Other PI/PD/WD (23)
**Non-PI/PD/WD (Other) Tort**
☐ Business tort/unfair business practice (07)
☐ Civil rights (08)
☐ Defamation (13)
☐ Fraud (16)
☐ Intellectual property (19)
☐ Professional negligence (25)
☐ Other non-PI/PD/WD tort (35)
**Employment**
✔ Wrongful termination (36)
☐ Other employment (15)

**Contract**
☐ Breach of contract/warranty (06)
☐ Rule 3.740 collections (09)
☐ Other collections (09)
☐ Insurance coverage (18)
☐ Other contract (37)
**Real Property**
☐ Eminent domain/Inverse condemnation (14)
☐ Wrongful eviction (33)
☐ Other real property (26)
**Unlawful Detainer**
☐ Commercial (31)
☐ Residential (32)
☐ Drugs (38)
**Judicial Review**
☐ Asset forfeiture (05)
☐ Petition re: arbitration award (11)
☐ Writ of mandate (02)
☐ Other judicial review (39)

**Provisionally Complex Civil Litigation (Cal. Rules of Court, rules 3.400–3.403)**
☐ Antitrust/Trade regulation (03)
☐ Construction defect (10)
☐ Mass tort (40)
☐ Securities litigation (28)
☐ Environmental/Toxic tort (30)
☐ Insurance coverage claims arising from the above listed provisionally complex case types (41)
**Enforcement of Judgment**
☐ Enforcement of judgment (20)
**Miscellaneous Civil Complaint**
☐ RICO (27)
☐ Other complaint *(not specified above)* (42)
**Miscellaneous Civil Petition**
☐ Partnership and corporate governance (21)
☐ Other petition *(not specified above)* (43)

2. This case ☐ is   ✔ is not   complex under rule 3.400 of the California Rules of Court. If the case is complex, mark the factors requiring exceptional judicial management:
   a. ☐ Large number of separately represented parties
   b. ☐ Extensive motion practice raising difficult or novel issues that will be time-consuming to resolve
   c. ☐ Substantial amount of documentary evidence
   d. ☐ Large number of witnesses
   e. ☐ Coordination with related actions pending in one or more courts in other counties, states, or countries, or in a federal court
   f. ☐ Substantial postjudgment judicial supervision

3. Remedies sought *(check all that apply):* a. ✔ monetary   b. ☐ nonmonetary; declaratory or injunctive relief   c. ✔ punitive
4. Number of causes of action *(specify):* 7
5. This case ☐ is   ✔ is not   a class action suit.
6. If there are any known related cases, file and serve a notice of related case. *(You may use form CM-015.)*

Date: April 28, 2022

Gary S. Brotman
_____
(TYPE OR PRINT NAME)                    ► _____ (SIGNATURE OF PARTY OR ATTORNEY FOR PARTY)

**NOTICE**
- Plaintiff must file this cover sheet with the first paper filed in the action or proceeding (except small claims cases or cases filed under the Probate Code, Family Code, or Welfare and Institutions Code). (Cal. Rules of Court, rule 3.220.) Failure to file may result in sanctions.
- File this cover sheet in addition to any cover sheet required by local court rule.
- If this case is complex under rule 3.400 et seq. of the California Rules of Court, you must serve a copy of this cover sheet on all other parties to the action or proceeding.
- Unless this is a collections case under rule 3.740 or a complex case, this cover sheet will be used for statistical purposes only.

Page 1 of 2

| Form Adopted for Mandatory Use<br>Judicial Council of California<br>CM-010 [Rev. July 1, 2007] | **CIVIL CASE COVER SHEET** | Cal. Rules of Court, rules 2.30, 3.220, 3.400–3.403, 3.740;<br>Cal. Standards of Judicial Administration, std. 3.10<br>*www.courtinfo.ca.gov* |

**SUM-100**

# SUMMONS
## *(CITACION JUDICIAL)*

FOR COURT USE ONLY
*(SOLO PARA USO DE LA CORTE)*



F I L E D

APR 29 2022

**NOTICE TO DEFENDANT:**
*(AVISO AL DEMANDADO):*
Fairlife, LLC, a Delaware corporation, and DOES 1 through 50, inclusive

**YOU ARE BEING SUED BY PLAINTIFF:**
*(LO ESTÁ DEMANDANDO EL DEMANDANTE):*
Gregory Weston, an individual

**NOTICE!** You have been sued. The court may decide against you without your being heard unless you respond within 30 days. Read the information below.

You have 30 CALENDAR DAYS after this summons and legal papers are served on you to file a written response at this court and have a copy served on the plaintiff. A letter or phone call will not protect you. Your written response must be in proper legal form if you want the court to hear your case. There may be a court form that you can use for your response. You can find these court forms and more information at the California Courts Online Self-Help Center (*www.courtinfo.ca.gov/selfhelp*), your county law library, or the courthouse nearest you. If you cannot pay the filing fee, ask the court clerk for a fee waiver form. If you do not file your response on time, you may lose the case by default, and your wages, money, and property may be taken without further warning from the court.

There are other legal requirements. You may want to call an attorney right away. If you do not know an attorney, you may want to call an attorney referral service. If you cannot afford an attorney, you may be eligible for free legal services from a nonprofit legal services program. You can locate these nonprofit groups at the California Legal Services Web site (*www.lawhelpcalifornia.org*), the California Courts Online Self-Help Center (*www.courtinfo.ca.gov/selfhelp*), or by contacting your local court or county bar association. **NOTE:** The court has a statutory lien for waived fees and costs on any settlement or arbitration award of $10,000 or more in a civil case. The court's lien must be paid before the court will dismiss the case.

*¡AVISO! Lo han demandado. Si no responde dentro de 30 días, la corte puede decidir en su contra sin escuchar su versión. Lea la información a continuación.*

*Tiene 30 DÍAS DE CALENDARIO después de que le entreguen esta citación y papeles legales para presentar una respuesta por escrito en esta corte y hacer que se entregue una copia al demandante. Una carta o una llamada telefónica no lo protegen. Su respuesta por escrito tiene que estar en formato legal correcto si desea que procesen su caso en la corte. Es posible que haya un formulario que usted pueda usar para su respuesta. Puede encontrar estos formularios de la corte y más información en el Centro de Ayuda de las Cortes de California (www.sucorte.ca.gov), en la biblioteca de leyes de su condado o en la corte que le quede más cerca. Si no puede pagar la cuota de presentación, pida al secretario de la corte que le dé un formulario de exención de pago de cuotas. Si no presenta su respuesta a tiempo, puede perder el caso por incumplimiento y la corte le podrá quitar su sueldo, dinero y bienes sin más advertencia.*

*Hay otros requisitos legales. Es recomendable que llame a un abogado inmediatamente. Si no conoce a un abogado, puede llamar a un servicio de remisión a abogados. Si no puede pagar a un abogado, es posible que cumpla con los requisitos para obtener servicios legales gratuitos de un programa de servicios legales sin fines de lucro. Puede encontrar estos grupos sin fines de lucro en el sitio web de California Legal Services, (www.lawhelpcalifornia.org), en el Centro de Ayuda de las Cortes de California, (www.sucorte.ca.gov) o poniéndose en contacto con la corte o el colegio de abogados locales. AVISO: Por ley, la corte tiene derecho a reclamar las cuotas y los costos exentos por imponer un gravamen sobre cualquier recuperación de $10,000 ó más de valor recibida mediante un acuerdo o una concesión de arbitraje en un caso de derecho civil. Tiene que pagar el gravamen de la corte antes de que la corte pueda desechar el caso.*

| | |
|---|---|
| The name and address of the court is: <br> *(El nombre y dirección de la corte es):* Wakefield Taylor Courthouse <br> 725 Court Street <br> Martinez, CA 94553 | CASE NUMBER: <br> *(Número del Caso):* — 0 0 8 8 4 — |

The name, address, and telephone number of plaintiff's attorney, or plaintiff without an attorney, is:
*(El nombre, la dirección y el número de teléfono del abogado del demandante, o del demandante que no tiene abogado, es):*

Gary S. Brotman (287726); Marquee Law Group, A.P.C., 9100 Wilshire Blvd., Suite 445 East Tower, Beverly Hills, CA 90212; T: (310) 275-1844

| DATE: ~~April 28, 2022~~    APR 29 2022 | Clerk, by T. Schrad | , Deputy |
|---|---|---|
| *(Fecha)* | *(Secretario)* | *(Adjunto)* |

*(For proof of service of this summons, use Proof of Service of Summons (form POS-010).)*
*(Para prueba de entrega de esta citación use el formulario Proof of Service of Summons, (POS-010)).*

[SEAL]

**NOTICE TO THE PERSON SERVED:** You are served
1. [X] as an individual defendant.
2. [ ] as the person sued under the fictitious name of *(specify):*

3. [ ] on behalf of *(specify):*

    under: [ ] CCP 416.10 (corporation)         [ ] CCP 416.60 (minor)
            [ ] CCP 416.20 (defunct corporation)   [ ] CCP 416.70 (conservatee)
            [ ] CCP 416.40 (association or partnership)   [ ] CCP 416.90 (authorized person)
            [ ] other *(specify):*
4. [ ] by personal delivery on *(date):*

Page 1 of 1

| Form Adopted for Mandatory Use <br> Judicial Council of California <br> SUM-100 [Rev. July 1, 2009] | **SUMMONS** | Code of Civil Procedure §§ 412.20, 465 <br> www.courtinfo.ca.gov |
|---|---|---|

1  F. Shawn Azizollahi (SBN 268116)
   shawn@marqueelaw.com
2  Poya Ghasri (SBN 268119)
3  poya@marquelaw.com
   Gary Brotman (SBN 287726)
4  gary@marqueelaw.com
   MARQUEE LAW GROUP, A Professional Corporation
5  9100 Wilshire Boulevard, Suite 445 East Tower
   Beverly Hills, California 90212
6  (310) 275-1844 telephone
7  (310) 275-1801 fax
8  Attorneys for Plaintiff
9  GREGORY WESTON

F I L E D

APR 29 2022

PER LOCAL RULE, THIS
CASE IS ASSIGNED TO
DEPT ___ FOR ALL
PURPOSES

SUMMONS ISSUED

10

11          **SUPERIOR COURT OF THE STATE OF CALIFORNIA**

12              **COUNTY OF CONTRA COSTA**

13

14  GREGORY WESTON, an individual;     )   Case No.: C 22 - 00884 -
                                        )
15              Plaintiff,              )   **COMPLAINT FOR:**
         vs.                            )
16                                      )   1. **Race Discrimination in Violation of Cal.**
                                        )      **Gov. Code Section 12900 et seq.;**
17  FAIRLIFE, LLC., a Delaware corporation; )  2. **Harassment and Hostile Work**
18  JEFF LOBUS, an individual; and DOES 1 )     **Environment in Violation of Cal. Gov.**
    through 50, inclusive.              )         **Code Section 12900 et seq.;**
19                                      )   3. **Failure to Prevent Discrimination and**
                                        )      **Harassment in Violation of Cal. Gov.**
20              Defendants.             )      **Code Section 12900 et seq.;**
                                        )   4. **Wrongful Termination In Violation of**
21                                      )      **Public Policy (Count I);**
                                        )   5. **Wrongful Termination In Violation of**
22                                      )      **Public Policy (Count II);**
                                        )   6. **Negligence;**
23                                      )   7. **Unlawful Business Practices in Violation**
                                        )      **of Bus. and Prof. Code Section 17200 et**
24                                      )      **seq.**
25  _____)

26

27

28

-1-
COMPLAINT

Plaintiff alleges:

**PARTIES**

1. Plaintiff, Gregory Weston ("Plaintiff" herein), is, and at all relevant times was, a resident of the County of Contra Costa, in the State of California.

2. Plaintiff is informed and believes, and based thereon alleges, that Defendant Fairlife, LLC ("Fairlife") is, and at all relevant times was, a corporation organized and existing under the laws of the state of Delaware, qualified to do business in the state of California, with its principal place of business located at 1001 West Adams Street, Chicago, Illinois 60607.

3. Plaintiff is informed and believes, and based thereon alleges, that Defendant Jeff Lobus is, and at all relevant times was, a resident of Cherokee County, Georgia. At all relevant times, Lobus was a Vice President of Field Sales for Fairlife and Plaintiff's direct supervisor, who controlled the wages, hours, and working conditions of Plaintiff.

4. Plaintiff is ignorant of the true names and capacities of the defendants sued herein as DOES 1 through 50, inclusive, and therefore sues these defendants by such fictitious names. Plaintiff will amend this Complaint to allege the true names and capacities of said defendants when ascertained. Plaintiff is informed and believes, and based thereon allege, that each of the fictitiously named defendants is responsible in some manner for the occurrences herein alleged, and that Plaintiff's damages as herein alleged were proximately caused by said defendants. (Fairlife, Lobus, and DOES 1 through 50 shall collectively herein be referred to as "Defendants").

5. At all relevant times herein, Defendants employed Plaintiff, within the meaning of California Government Code § 12926(d). Plaintiff was employed by Defendants and worked remotely for Defendants from Danville, California, until, as alleged herein, Plaintiff's employment was wrongfully terminated on or about December 13, 2021, for unlawful reasons in violation of the California Fair Employment and Housing Act ("FEHA," California Government Code § 12900 et seq.) and in violation of California public policy.

6. Unless otherwise alleged in this Complaint, Plaintiff is informed and believes, and based thereon alleges, that each of the Defendants sued herein was, at all relevant times hereto,

-2-
COMPLAINT

1   the employer, owner, principal, franchisee, proxy, agent, employee, supervisor, representative,

2   manager, managing agent, joint employer, and/or alter ego of the remaining Defendants, and was

3   acting, at least in part, within the course and scope of such employment and agency, with express

4   and implied permission, consent, and knowledge. The above Defendants, managing agents, and

5   supervisors aided, abetted, condoned, permitted, willfully ignored, approved, authorized, and/or

6   ratified the unlawful acts described herein, and each and every one of the acts and omissions

7   alleged herein were performed by, and/or are attributable to all Defendants.

8

9                                    **JURISDICTION**

10        7.      Plaintiff is informed and believes, and based thereon alleges, that at all times

11  herein mentioned, Defendants, and each of them, were doing business in the State of California

12  such that the exercise of jurisdiction by the Superior Court of California would not be

13  inconsistent with the Constitution of the State of California and/or the United States of America.

14        8.      The Superior Court of California has jurisdiction over this action pursuant to

15  California Code of Civil Procedure Section 410.10.

16        9.      The total amount in controversy for claims of Plaintiff is more than Twenty-Five

17  Thousand Dollars ($25,000).

18

19                                      **VENUE**

20        10.     Plaintiff is informed and believes, and based thereon alleges, that venue is proper

21  in Contra Costa County because Defendants, and each of them, have conducted business within

22  the County of Contra Costa, employed Plaintiff within the County of Contra Costa, and a

23  substantial portion of the wrongful acts complained of occurred therein.

24

25                               **GENERAL ALLEGATIONS**

26        11.     Plaintiff alleges and incorporates herein by this reference each and every

27  allegation set forth in all previous paragraphs of this Complaint.

28

***Plaintiff's Employment:***

12.     Defendants employed Plaintiff from in or about February 12, 2021 until on or about December 13, 2021 (the "Employment Period").

13.     Fairlife is a producer of dairy-based products, distributing its products throughout the United States. Per its website, Fairlife touts itself as an equal opportunity employer that does "not discriminate on the basis of race, color, religion, national origin, gender, age, disability, veteran status, or any other category protected by law." Unfortunately, this representation did not apply to Plaintiff's employment, as he was deprived of the very equal opportunity that Fairlife alleges to promote.

14.     Defendants employed Plaintiff as the Senior Director of Sales – West Zone throughout his employment. Plaintiff's responsibilities included, but were not limited to, overseeing sales of Fairlife products throughout the western region of the United States, developing marketing strategy, and managing a team of approximately five (5) salespersons spread throughout the western region.

15.     The offer letter signed by Plaintiff and Defendants on or about February 12, 2021 (the "Offer Letter"), provided Plaintiff with a starting base salary of $185,000, as well as benefits including, but not limited to, medical, dental, life insurance, vision, short-term disability, and long-term disability benefits. Plaintiff's employment further entitled him to a Leadership Incentive Award ("LIA") of up to 25% of his salary, and an annual merit bonus of up to another 30% of his salary, multiplied by the company's performance. Although the LIA states that it was a one-time payment, Plaintiff negotiated with Defendants to receive an annual LIA award.

***Plaintiff's Protected Status:***

16.     Plaintiff is a 48-year-old African American male in a workplace that promotes itself as diverse, however, is lacking such diversity amongst its Senior Director/VP/Executive level members. The demographic of Defendants' Senior Director/VP/Executive level members is dominated by Caucasian males, who are valued, hired, promoted, and retained without regard for merit. Plaintiff, the only African American member of the Senior Director sales team, was

-4-
COMPLAINT

wrongfully terminated for discriminatory reasons. Consequently, Plaintiff is a protected employee, as defined under California Law. (See. Cal. Gov't Code § 12940, *et seq.*).

***Plaintiff's Job Performance:***

17.     Plaintiff was an exemplary employee of Defendants throughout the entirety of the Employment Period. In fact, Plaintiff maintained the highest sales numbers of all the Senior Directors of Sales throughout his employment. Shortly prior to his wrongful termination, Plaintiff was informed by Defendants that he was set to receive the full amount of his LIA award and merit bonus for his excellent work. Per Plaintiff's calculations, this would have resulted in a total bonus of over $120,000.00.

18.     Moreover, Plaintiff's personnel file is devoid of any negative performance reviews, write ups, or complaints against him. The only mark against Plaintiff's record is the alleged violation of Fairlife's harassment and discrimination policy, curiously brought to Plaintiff's attention just prior to earning his LIA and merit bonus. The suspicious timing of this allegation resulted in Plaintiff's wrongful termination.

***Defendants' Discriminatory Adverse Employment Actions:***

19.     In order to obtain his employment with Defendants, Plaintiff was required to participate in a series of interviews. Plaintiff's initial interview took place with Lobus, his direct supervisor and a Caucasian male. Plaintiff then had a second interview with Defendant's Vice President of Commercialization Colin Schriver and Defendant's Vice President of National Accounts Mike DiPasquale. Plaintiff is informed and believes that Schriver and DiPasquale are both Caucasian males.

20.     Plaintiff then partook in a third and final interview with Defendant's former Chief Operating Officer Jeremy Faa, a Caucasian male, and Fairlife's now retired Chief Executive Officer Bill Kelly, another Caucasian male. It was after this series of interviews that Faa and Kelly approved the hiring of Plaintiff as a Senior Director of Sales and authorized the Offer Letter received by Plaintiff. It should be noted that Faa has since been replaced by Karim Yahi, a Caucasian male, and Kelly has been replaced by current CEO Tim Doelman. As one could guess, Doelman is a Caucasian male.

21.     As the Senior Director of Sales – West Zone, Plaintiff was one of four (4) members of the Senior Director team under Lobus. The Senior Director sales team was comprised of four (4) members covering the north, central, south, and west zones. The three (3) remaining members of the Senior Director sales team were all Caucasian (two male and one female).

22.     Moreover, Plaintiff was placed in charge of a sales team that was comprised of five (5) members, each of whom were Caucasian. The lack of diversity within the workplace was apparent on its face.

23.     In fact, the issue of diversity was addressed during Plaintiff's interview with Faa and Kelly, wherein they admitted that Fairlife needed to improve upon its diversity, particularly amongst its leadership. Plaintiff was seen as a good diversity hire. Faa would go on to set bi-monthly calls with Plaintiff wherein he would discuss Fairlife's need to improve upon the diversity of its employees, particularly those in leadership roles. Interestingly enough, Faa requested that Plaintiff, the only African American Senior Director/VP/Executive, take leadership in the initiative to improve diversity and equal opportunity in Fairlife's hiring practices. However, Faa would leave Fairlife in or about July 2021. No one else for Defendants would follow up with Plaintiff concerning any diversity initiatives.

24.     While the remaining Senior Director/VP/Executive team at Fairlife seemed to have little concern for diversity, or the lack thereof, Plaintiff's relationship with Lobus was particularly contentious. Lobus has been employed by Fairlife for approximately nine (9) years, and previously held Plaintiff's position as the Senior Director of Sales. As such, Lobus had worked side by side with each of the other three (3) Caucasian Senior Directors of Sales prior to his promotion. Lobus appeared to take issue with the fact that Plaintiff received the Senior Director position, as opposed to an internal promotion of one of his close associates, all of whom happened to be Caucasian men.

25.     As a result, Plaintiff's relationship with Lobus was not what he would have expected from a Vice President and direct supervisor. Lobus rarely reached out to Plaintiff to discuss work, and became instantly critical, if not angered, whenever Plaintiff would offer

-6-
COMPLAINT

opposition or constructive criticism to his approach to certain tasks/initiatives. In fact, Plaintiff was forced to confront Lobus for yelling at Plaintiff in front of the other Senior Directors. This only angered Lobus even further and created a larger divide in their professional relationship.

26.    Although Plaintiff worked remotely, Defendants held many virtual meetings, and multiple events where Fairlife employees would meet in person. While these events were intended to be for work-related purposes, they often involved extra-curricular activities such as dinners, drinking, bars, etc. Lobus attended and/or orchestrated many of these extra-curricular activities and was often the most senior employee at these events, setting the example for the conduct of others.

27.    While Plaintiff saw no issue with these sorts of team bonding activities, Lobus took the extra-curriculars a step further, engaging in more lewd and lascivious conduct. For instance, Lobus would frequent strip-clubs with fellow employees. Lobus would also openly discuss such ventures and joke about excessive drinking, being hung over, and made lewd and sexually explicit comments in front of the female employees. Being that his relationship with Lobus was somewhat tenuous, Plaintiff chose not to speak out against him for violating Fairlife's code of conduct out of fear for retaliation.

28.    Nonetheless, Plaintiff continued to put his head down, work hard, and focus on sales and supporting his sales team. Plaintiff had an excellent report with his sales team. Plaintiff prided himself on having a (virtual) open door policy for his team to express their concerns, whether it be business related or personal. Plaintiff believed that asking his team how they were doing, learning about their families, and their likes and dislikes, and being open in return would help foster a bond within his team. That bond would then encourage his team to work harder for one another. Plaintiff's ideology proved highly successful, as evidenced by his team's sales numbers during the Employment Period.

29.    Plaintiff was soon set to reap significant rewards from his success. In the beginning of 2022, Plaintiff was set to receive his LIA, which he was informed would be the maximum 25% of his salary. This would equate to a bonus of approximately $45,000. Plaintiff was also informed that his excellent work, coupled with Fairlife's performance due in large part

to Plaintiff's sales numbers, was going to result in a full merit bonus of 30% of Plaintiff's salary multiplied by the company's performance at 150% due to exceeding sales projections at the end of the fiscal year. Per Plaintiff's calculations, this would have resulted in a merit bonus of over $80,000.

30.     However, Plaintiff's success appeared to irk Lobus, particularly as Plaintiff continued to outshine his fellow Senior Directors, each of whom were Caucasian. While Plaintiff was aware of this tension, he did not expect the discriminatory and wrongful actions Defendants would soon take against him.

31.     On or about December 13, 2021, Lobus requested a Zoom call with Plaintiff to discuss some structural changes to the West zone. Once Plaintiff joined the call with Lobus, Defendant's Human Resources Manager Shannon Brozewicz appeared on the call.

32.     Brozewicz and Lobus would go on to accuse Plaintiff of flirtatious behavior with a member of his sales team. Although it was now December, mere weeks before Plaintiff's bonuses would be earned, Brozewicz and Lobus claimed that the alleged misconduct took place between April and July. Lobus claimed that an investigation was conducted, however this was the first and only time Plaintiff had learned of this issue. In direct contravention to Respondent's own policy for investigating such complaints, Plaintiff was never contacted about the allegations, never interviewed, and never offered the opportunity to respond to the accusations.

33.     Despite being one of the most, if not the most successful Senior Director of Sales for Defendants, and not having a negative review, prior complaint, or a single blemish to his employment record, Defendants took this as their opportunity to terminate Plaintiff's employment. Defendants cited an alleged violation of Fairlife's harassment and discrimination policy. Plaintiff is informed and believes, and based thereon alleges, that the termination of his employment was done to prevent the anticipated windfall of bonus earnings owed to Plaintiff, and was an act of discrimination proliferated by Defendants in an effort to maintain the sanctity of its Caucasian male leadership team.

*Exhaustion of Administrative Remedies:*

34.    At all applicable times mentioned herein, Defendants regularly employed five or more persons in California, bringing Defendants subject to the provisions of the Fair Employment and Housing Act ("FEHA").

35.    Plaintiff has adequately exhausted all of his administrative remedies under the FEHA and obtained a valid "right to sue" letter against Defendants from the Department of Fair Employment and Housing.

## FIRST CAUSE OF ACTION

(Race Discrimination in Violation of Cal. Gov. Code Section 12900 et seq.

by Plaintiff Against Fairlife and DOES 1 - 50)

36.    Plaintiff alleges and incorporates herein by this reference each and every allegation set forth in all previous paragraphs of this Complaint.

37.    There existed an employer-employee relationship between Plaintiff and Defendants during the Employment Period and, at all times herein, Plaintiff was duly qualified and performed his employment duties in a satisfactory manner.

38.    Plaintiff is a 48-year-old African American male who was the only African American Senior Director of Sales. As such, Plaintiff is a member of a protected class within the meaning of FEHA and is entitled to its guarantees of full and equal access to employment.

39.    It is unlawful for an employer to discriminate against an employee based on the employee's "race, religious creed, color, national origin, ancestry, physical disability, mental disability, medical condition, genetic information, marital status, sex, gender, gender identity, gender expression, age, sexual orientation, or military and veteran status of any person" or to "discharge the person from employment… or to discriminate against the person in compensation or in terms, conditions, or privileges of employment." (Cal. Gov't Code § 12940(a)).

40.    Plaintiff was, at all times herein, an "employee" covered by California Government Code § 12900 et seq.

-9-
COMPLAINT

41.     The Company was at all relevant times hereto, an "employer" within the meaning of California Government Code § 12900 et seq.

42.     Plaintiff's race and/or other characteristics protected by FEHA were motivating factors in Defendant's adverse treatment of Plaintiff, as set forth in detail herein above.

43.     Plaintiff has performed competently and has gone above and beyond in his position, has suffered an adverse employment action, and the circumstances give rise to the discriminatory conduct from Defendants.

44.     As alleged herein above, Defendant's Senior Director/VP/Executive level employees are predominantly Caucasian men. Plaintiff's direct supervisor, Lobus, is a Caucasian male; Defendant's Vice President of Commercialization Colin Schriver and Vice President of National Accounts Mike DiPasquale are both Caucasian men; Defendants former COO Jeremy Faa and current COO Karim Yahi are Caucasian men; and Defendant's former CEO Bill Kelly and current CEO Tim Doelman are both Caucasian men. Even Plaintiff's five (5) person sales team was entirely Caucasian. The lack of diversity in Defendant's workforce was apparent on its face.

45.     Moreover, Defendants openly admitted to Plaintiff that there was a lack of diversity, particularly amongst those in leadership positions. Plaintiff was viewed as a good diversity hire. Defendants initially requested that Plaintiff, the only African American Senior Director/VP/Executive, take leadership in the initiative to improve diversity and equal opportunity in Fairlife's hiring practices. However, there was very little follow through on this initiative by Defendants.

46.     Although Plaintiff excelled in his role, he was looked upon with disfavor by Defendants, particularly by Lobus. Lobus appeared to take issue with the fact that Plaintiff received the Senior Director position, as opposed to an internal promotion of one of his close associates, all of whom happened to be Caucasian men. As a result, Plaintiff's relationship with Lobus was strained. Lobus rarely reached out to Plaintiff to discuss work, and became instantly critical, if not angered, whenever Plaintiff would offer opposition or constructive criticism to his approach to certain tasks/initiatives. In fact, Plaintiff was forced to confront Lobus for yelling at

Plaintiff in front of the other Senior Directors. This only angered Lobus even further and created a larger divide in their professional relationship. It was then Lobus who brought the outlandish allegations of flirtatious behavior against Plaintiff and terminated his employment.

47.     Defendants' conduct as alleged herein violated FEHA and Defendant committed unlawful employment practices, including, without limitation, discriminating against Plaintiff by materially affecting the terms and conditions of his employment, in whole or in part on the basis of Plaintiff's race and/or other protected characteristics in violation of California Government Code §12940(a).

48.     As a direct, foreseeable, and proximate result of Defendants' actions, Plaintiff has suffered and continues to suffer aggravation of his injuries, substantial losses in earnings and job benefits, humiliation, emotional distress, and physical and mental pain and anguish all to his damage in a sum according to proof at the time of trial.

49.     Plaintiff has incurred and continues to incur legal expenses and attorneys' fees pursuant to Government Code § 12965(b). Plaintiff is entitled to recover reasonable attorneys' fees and costs in an amount according to proof at the time of trial.

50.     Defendants' conduct was willful, knowing, malicious, intentional, and done in reckless disregard of the damaging consequences to Plaintiff. Defendants' conduct evidenced a conscious disregard of Plaintiff's rights. Plaintiff is thus entitled to recover actual, compensatory, punitive, and exemplary damages in amounts according to proof at time of trial.

## SECOND CAUSE OF ACTION

(Harassment and Hostile Work Environment in Violation of Cal. Gov. Code Section 12900 et seq. by Plaintiff Against Defendants and DOES 1 - 50)

51.     Plaintiff alleges and incorporates herein by this reference each and every allegation set forth in all previous paragraphs of this First Amended Complaint.

52.     There existed an employer-employee relationship between Plaintiff and Defendants during the Employment Period and, at all times herein, Plaintiff was duly qualified and performed his employment duties in a satisfactory manner.

-11-
COMPLAINT

53.     It is unlawful for an employer to harass an employee based on the employee's "race, religious creed, color, national origin, ancestry, physical disability, mental disability, medical condition, genetic information, marital status, sex, gender, gender identity, gender expression, age, sexual orientation, or military and veteran status of any person." Harassment of an employee "shall be unlawful if the entity, or its agents or supervisors, knows or should have known of this conduct and fails to take immediate and appropriate corrective action. (Cal. Gov't Code § 12940(j)).

54.     Plaintiff's race and/or other characteristics protected by FEHA were motivating factors in Defendants' adverse treatment of Plaintiff.

55.     In perpetrating the above-described action, the Defendants, and each of them, and/or their agents or employees engaged in a pattern and practice of unlawful harassment in violation of FEHA and California Government Code § 12940(j). Defendants, and each of them, harassed Plaintiff and/or failed to take immediate and appropriate corrective action. The harassment was sufficiently pervasive and severe as to alter the conditions of employment and create a hostile or abusive work environment.

56.     As a proximate result of Defendants' willful, knowing, and intentional discrimination against Plaintiff, Plaintiff has suffered and continues to suffer humiliation, emotional distress, and physical and mental pain and anguish, all to his damage in a sum according to proof at the time of trial.

57.     Plaintiff has incurred and continues to incur legal expenses and attorneys' fees pursuant to Government Code § 12965(b). Plaintiff is entitled to recover reasonable attorneys' fees and costs in an amount according to proof at the time of trial.

58.     Defendants' conduct was willful, knowing, malicious, and intentional and done in reckless disregard of the damaging consequences to Plaintiff. Defendants' conduct evidenced a conscious disregard of Plaintiff's rights. Plaintiff is thus entitled to recover actual, compensatory, punitive, and exemplary damages in amounts according to proof at time of trial.

-12-
COMPLAINT

**THIRD CAUSE OF ACTION**

(Failure to Prevent Discrimination and Harassment in Violation of Cal. Gov. Code

Section 12900 et seq. by Plaintiff Against Fairlife and DOES 1 - 50)

59.     Plaintiff alleges and incorporates herein by this reference each and every allegation set forth in all previous paragraphs of this First Amended Complaint.

60.     There existed an employer-employee relationship between Plaintiff and Defendants during the Employment Period and, at all times herein, Plaintiff was duly qualified and performed his employment duties in a satisfactory manner.

61.     California law requires that employers take reasonable steps to prevent and correct wrongful behavior, including, but not limited to, harassing and discriminatory behavior. (*See* Gov. Code § 12940(k)) (It is unlawful "For an employer… to fail to take all reasonable steps necessary to prevent discrimination and harassment from occurring.")). Pursuant to this statute, Defendants were required to take all reasonable steps to prevent discrimination against Plaintiff based on Plaintiff's disability, gender, and/or other protected characteristics.

62.     As alleged herein above, Defendants failed to prevent their agents, supervisors, employees, and others from engaging in intentional actions that resulted in Plaintiff being treated less favorably because of Plaintiff's protected status (i.e., race). Rather than taking the initiative to improve diversity amongst those in leadership roles, Defendants chose to reverse course and wrongfully terminate Plaintiff's employment.

63.     Plaintiff is informed and believes, and based thereon alleges, that his race and/or other characteristics protected by FEHA were substantial motivating factors in the Defendants' adverse treatment of Plaintiff. Despite knowing its legal obligations, Defendants did nothing to prevent the rampant discrimination and harassment that Plaintiff suffered.

64.     Defendants knew, or reasonably should have known of the other Defendants and their agents, supervisors and employees' unlawful discrimination and harassment of Plaintiff, and that Defendants should have restrained such other Defendants from engaging in such conduct.

65.     As a direct, foreseeable, and proximate result of Defendants' actions, Plaintiff has suffered and continues to suffer aggravation of his injuries, substantial losses in earnings and job benefits, humiliation, emotional distress, and physical and mental pain and anguish all to his damage in a sum according to proof at the time of trial.

66.     Plaintiff has incurred and continues to incur legal expenses and attorneys' fees pursuant to Government Code § 12965(b). Plaintiff is entitled to recover reasonable attorneys' fees and costs in an amount according to proof at the time of trial.

67.     Defendants' conduct was willful, knowing, malicious, intentional, and done in reckless disregard of the damaging consequences to Plaintiff. Defendants' conduct evidenced a conscious disregard of Plaintiff's rights. Plaintiff is thus entitled to recover actual, compensatory, punitive, and exemplary damages in amounts according to proof at time of trial.

**FOURTH CAUSE OF ACTION**

(Wrongful Termination in Violation of Public Policy (Count I)

by Plaintiff Against Fairlife and DOES 1 - 50)

68.     Plaintiff alleges and incorporates herein by this reference each and every allegation set forth in all previous paragraphs of this Complaint.

69.     At all relevant times herein, there existed an employer-employee relationship between Plaintiff and Defendants during the Employment Period.

70.     At all relevant times herein, Plaintiff was duly qualified and performed his employment duties in a satisfactory manner.

71.     At all relevant times to this action, Government Code § 12900 et seq. was in full force and effect and was binding upon Defendants. Defendants' termination of Plaintiff was in violation of fundamental public policies, articulated in the California Government Code, for the benefit of the public, including California Government Code Section 12900 et seq. California Government Code Section 12900 et seq.'s policy behind the prevention of discrimination protects Plaintiff and the public at large, is substantial and fundamental, was well established at the time of Plaintiff's discharge, and can form the basis for a common law wrongful termination

claim. (*Stevenson v. Superior Court (Huntington Mem. Hosp.),* (1997) 16 Cal.4th 880, 889; *Phillips v. St. Mary Regional Center* (2002) 96 Cal.App.4th 218, 227).

72.     Plaintiff's race and other protected characteristics were substantial motivating reasons for Defendants' decision to terminate Plaintiff's employment.

73.     As a proximate result of Defendants' conduct, Plaintiff has sustained and continues to sustain substantial losses in earnings and other employment benefits.

74.     As a result of such wrongful conduct, Plaintiff has suffered and continues to suffer substantial humiliation, mental anguish, and emotional distress, on account of which Plaintiff is entitled to compensatory damages, the exact amount and nature of which exceeds the jurisdictional limits of this Court but is presently unknown to Plaintiff, who will either seek leave to amend this Complaint upon ascertaining such information or will prove the same at the time of trial.

75.     The acts of Defendants were intentional, malicious, wanton, oppressive, and fraudulent, with conscious disregard of Plaintiff's rights and with intent to vex, injure, punish, and annoy Plaintiff so as to cause the injuries sustained by Plaintiff to be within the meaning of California Civil Code § 3294. Plaintiff is therefore entitled to punitive and exemplary damages in an amount sufficient to punish and make an example of Defendants.

## FIFTH CAUSE OF ACTION

(Wrongful Termination in Violation of Public Policy (Count II)

by Plaintiff Against Fairlife and DOES 1 - 50)

76.     Plaintiff alleges and incorporates herein by this reference each and every allegation set forth in all previous paragraphs of this Complaint.

77.     At all relevant times herein, there existed an employer-employee relationship between Plaintiff and the Company during the Employment Period.

78.     At all relevant times herein, Plaintiff was duly qualified and performed his employment duties in a satisfactory manner.

79.    A wrongful discharge in violation of public policy lies where an employee alleges that the employer terminated him to avoid paying earned wages and other amounts rightfully earned. (*Gould v. Maryland Sound Industries, Inc.*, (1995) 31 Cal.App.4th 1137). Defendants' acts constitute a wrongful termination in violation of public policy based upon its termination of Plaintiff's employment to avoid providing compensation owed to Plaintiff in the form of his LIA and merit bonus. Plaintiff was set to earn his LIA and merit bonus within weeks of his wrongful termination, as a result of a year's worth of hard work and dedication in improving Defendants' sales.

80.    Plaintiff's impending earned bonuses were a substantial motivating reason for Defendants' decision to terminate Plaintiff's employment.

81.    As a proximate result of Defendants' conduct, Plaintiff has sustained and continues to sustain substantial losses in earnings and other employment benefits.

82.    As a result of such wrongful conduct, Plaintiff has suffered and continues to suffer substantial humiliation, mental anguish, and emotional distress, on account of which Plaintiff is entitled to compensatory damages, the exact amount and nature of which exceeds the jurisdictional limits of this Court but is presently unknown to Plaintiff, who will either seek leave to amend this Complaint upon ascertaining such information or will prove the same at the time of trial.

83.    The acts of Defendants were intentional, malicious, wanton, oppressive, and fraudulent, with conscious disregard of Plaintiff's rights and with intent to vex, injure, punish, and annoy Plaintiff so as to cause the injuries sustained by Plaintiff to be within the meaning of California Civil Code § 3294. Plaintiff is therefore entitled to punitive and exemplary damages in an amount sufficient to punish and make an example of Defendants.

## SIXTH CAUSE OF ACTION

(Negligence Against Defendants and DOES 1 - 50)

84.    Plaintiff alleges and incorporates herein by this reference each and every allegation set forth in all previous paragraphs of this Complaint.

-16-
COMPLAINT

85.     Defendants, acting within the course of scope of the employer/employee relationship with Plaintiff, owed a duty of care to conduct their relations with Plaintiff in a reasonable manner and to avoid actions that would cause foreseeable harm to Plaintiff or any person/employee in Plaintiff's position.

86.     At all times mentioned herein, it is reasonably foreseeable that employees such as Plaintiff would suffer harm if forced to suffer discriminatory, harassing, and hostile actions from their employer, such as those committed by Defendants and/or others as mentioned herein, as agents and employees of Defendants.

87.     In committing the discriminatory, harassing, and hostile conduct described herein, Defendants breached a duty of care to Plaintiff, and did inflict harm upon Plaintiff.

88.     The actions of Defendants were a substantial factor in causing Plaintiff's harm.

89.     As a proximate result of Defendants' conduct, Plaintiff has sustained and continues to sustain substantial losses in earnings and other employment benefits.

90.     As a result of such wrongful conduct, Plaintiff has suffered and continues to suffer substantial humiliation, mental anguish, and emotional distress, on account of which Plaintiff is entitled to compensatory damages, the exact amount and nature of which exceeds the jurisdictional limits of this Court but is presently unknown to Plaintiff, who will either seek leave to amend this Complaint upon ascertaining such information or will prove the same at the time of trial.

91.     The acts of Defendants were intentional, malicious, wanton, oppressive, and fraudulent, with conscious disregard of Plaintiff's rights and with intent to vex, injure, punish, and annoy Plaintiff so as to cause the injuries sustained by Plaintiff to be within the meaning of California Civil Code § 3294. Plaintiff is therefore entitled to punitive and exemplary damages in an amount sufficient to punish and make an example of Defendants.

//
//
//
//

## SEVENTH CAUSE OF ACTION

(Unfair Business Practices in Violation of Business and Professions Code Section 17200 et seq. by Plaintiff against Fairlife and DOES 1-50)

92.     Plaintiff alleges and incorporates herein by this reference each and every allegation set forth in all previous paragraphs of this First Amended Complaint.

93.     California Business and Professions Code Section 17200 et seq. prohibits any unlawful, unfair, or fraudulent business practices. Section 17200 applies to any unlawful or unfair or fraudulent business act or practice, and each provides an independent basis for relief. (*Podolsky v. First Health Corp.*, (1996) 50 Cal.App.4th 632, 647). Violations of section 17200 need not be both fraudulent and unfair; the test under section 17200 is that a practice merely be unfair. (*Allied Grape Growers v. Bronco Wine Co.*, (1988) 203 Cal.App.3d 432, 451).

94.     An employer who violates anti-discrimination laws "implicates unfair competition" because it may gain an unfair competitive advantage over employers who comply with such laws. (*Herr v. Nestle U.S.A., Inc.*, (2003) 109 Cal.App.4th 779, 789 (employer engaging in age discrimination in violation of FEHA may have advantage over competitors who do not discriminate)).

95.     Defendants' conduct exhibiting discrimination against Plaintiff on the basis of Plaintiff's race and/or other protected characteristics constitutes an unlawful and unfair business practice as such conduct is prohibited under California law. All of the foregoing harmed Plaintiff and continues to harm Plaintiff.

96.     Defendants' course of conduct, act, and practice in violation of the California laws mentioned herein above constitutes separate and independent unfair business practices and violations of California Business and Professions Code § 17200 *et seq.*

97.     Pursuant to California Business & Professions Code § 17200 et seq., Plaintiff is entitled to restitution during a period that commences four years prior to the filing of this complaint; a permanent injunction requiring Defendants to pay all outstanding wages due to Plaintiff; an award of attorney's fees pursuant to California Code of Civil Procedure § 1021.5 and other applicable laws; and an award of costs.

## PRAYER FOR RELIEF

WHEREFORE, Plaintiff prays for judgment against Defendants, jointly and severally, as follows:

### UNDER THE FIRST CAUSE OF ACTION

1. For all compensatory, consequential, general, and special damages, subject to proof;
2. For punitive damages in an amount to be determined by the Court to be reasonable under the circumstances of this case;
3. For attorney's fees and costs pursuant to Government Code § 12965(b);
4. For interest according to law;
5. For costs of suit incurred herein; and
6. For such other and further relief that the Court determines to be just and proper.

### UNDER THE SECOND CAUSE OF ACTION

1. For all compensatory, consequential, general, and special damages, subject to proof;
2. For punitive damages in an amount to be determined by the Court to be reasonable under the circumstances of this case;
3. For attorney's fees and costs pursuant to Government Code § 12965(b);
4. For interest according to law;
5. For costs of suit incurred herein; and
6. For such other and further relief that the Court determines to be just and proper.

### UNDER THE THIRD CAUSE OF ACTION

1. For all compensatory, consequential, general, and special damages, subject to proof;
2. For punitive damages in an amount to be determined by the Court to be reasonable under the circumstances of this case;
3. For attorney's fees and costs pursuant to Government Code § 12965(b);
4. For interest according to law;

5.   For costs of suit incurred herein; and

6.   For such other and further relief that the Court determines to be just and proper.

### UNDER THE FOURTH CAUSE OF ACTION

1.   For all compensatory, consequential, general, and special damages, subject to proof;

2.   For punitive damages pursuant to Civil Code § 3294, subject to proof;

3.   For interest according to law;

4.   For costs of suit incurred herein; and

5.   For such other and further relief that the Court determines to be just and proper.

### UNDER THE FIFTH CAUSE OF ACTION

1.   For all compensatory, consequential, general, and special damages, subject to proof;

2.   For punitive damages pursuant to Civil Code § 3294, subject to proof;

3.   For interest according to law;

4.   For costs of suit incurred herein; and

5.   For such other and further relief that the Court determines to be just and proper.

### UNDER THE SIXTH CAUSE OF ACTION

1.   For all compensatory, consequential, general, and special damages, subject to proof;

2.   For punitive damages pursuant to Civil Code § 3294, subject to proof;

3.   For costs of suit incurred herein; and

4.   For such other and further relief that the Court determines to be just and proper.

### UNDER THE SEVENTH CAUSE OF ACTION

1.   For restitution of all unpaid wages and monies due to Plaintiff and the disgorgement of profits from the unlawful business practices of Defendants, subject to proof;

2.   For attorney's fees and costs pursuant to Code of Civil Procedure §1021.5;

3.   Interest according to law;

4.   For costs of suit incurred herein; and

5.   For such other and further relief that the Court may deem just and proper.

Dated: April 28, 2022                         MARQUEE LAW GROUP, APC

By: _____
Gary S. Brotman, Esq.
Attorneys for Plaintiff Gregory Weston

### DEMAND FOR JURY TRIAL

PLAINTIFF hereby demands a jury trial with respect to all issues triable in the Complaint.

Dated: April 28, 2022                         MARQUEE LAW GROUP, APC

By: _____
Gary S. Brotman, Esq.
Attorneys for Plaintiff Gregory Weston

-21-
COMPLAINT



1  HIEU WILLIAMS (SBN 280585)
   JESSE D. SUTZ (SBN 338412)
2  HIRSCHFELD KRAEMER LLP
   456 Montgomery Street, Suite 2200
3  San Francisco, CA 94104
   Telephone: (415) 835-9000
4  Facsimile: (415) 834-0443

5  Attorneys for Defendants
   FAIRLIFE, LLC and JEFF LOBUS

6

7

8          SUPERIOR COURT OF THE STATE OF CALIFORNIA

9               COUNTY OF CONTRA COSTA

10

11  GREGORY WESTON, an individual,          Case No.: C22-00884

12              Plaintiff,                   **DEFENDANTS' ANSWER TO**
                                             **PLAINTIFF'S COMPLAINT**
13  vs.
                                             **[ASSIGNED TO JUDGE JOHN DEVINE -**
14  FAIRLIFE, LLC, a Delaware corporation;   **DEPT. 09 FOR ALL PURPOSES]**
    JEFF LOBUS, an individual; and DOES 1
15  through 50, inclusive,                   **Complaint Filed:** April 29, 2022

16              Defendants.

17

18

19        Defendants fairlife, LLC and Jeff Lobus (collectively "Defendants") submit the following

20  Answer to Plaintiff Gregory Weston's ("Plaintiff") Complaint for Damages:

21                        **GENERAL DENIAL**

22        Pursuant to California Code of Civil Procedure section 431.30(d), Defendants generally

23  deny each and every allegation contained in Plaintiff's Complaint. Defendants further deny that

24  Plaintiff has been damaged in any sum or amount whatsoever and deny that Plaintiff is entitled to

25  any declaratory relief, injunctive relief, compensatory damages, punitive damages, restitution,

26  interest, attorney's fees or costs, or any other form of legal or equitable relief whatsoever as he

27  has not suffered any damages by reason of any act or omission on Defendants' part.

28

Left margin: HIRSCHFELD KRAEMER LLP
ATTORNEYS AT LAW
SAN FRANCISCO

**AFFIRMATIVE DEFENSES**

As separate and distinct Affirmative Defenses to Plaintiff's Complaint, Defendants allege and aver as follows:

**FIRST AFFIRMATIVE DEFENSE**
**(Statute of limitations)**

1.      The Complaint, and each cause of action set forth therein, is barred in whole or in part by the applicable statutory of limitations.

**SECOND AFFIRMATIVE DEFENSE**
**(Failure to State a Claim)**

2.      The Complaint, and each cause of action set forth herein, fails to state facts sufficient to constitute any cause of action, or to set forth a claim upon which relief can the granted.

**THIRD AFFIRMATIVE DEFENSE**
**(Failure to Exhaust Administrative Remedies)**

3.      The Complaint, and each cause of action set forth herein, is barred because Plaintiff has failed to exhaust his administrative remedies.

**FOURTH AFFIRMATIVE DEFENSE**
**(Estoppel)**

4.      The Complaint, and each cause of action set forth therein, by reason of Plaintiff's conduct and actions, is barred by the doctrine of estoppel.

**FIFTH AFFIRMATIVE DEFENSE**
**(Unclean Hands)**

5.      The Complaint, and each cause of action set forth therein, by reason of Plaintiff's conduct and actions, is barred by the doctrine of unclean hands.

///

///

///

HIRSCHFELD KRAEMER LLP
ATTORNEYS AT LAW
SAN FRANCISCO

2

HIRSCHFELD KRAEMER LLP
ATTORNEYS AT LAW
SAN FRANCISCO

**SIXTH AFFIRMATIVE DEFENSE**
**(Waiver)**

6.      The Complaint, and each cause of action set forth therein, by reason of Plaintiff's conduct and actions, is barred by the doctrine of waiver.

**SEVENTH AFFIRMATIVE DEFENSE**
**(Laches)**

7.      The Complaint, and each cause of action set forth therein, by reason of Plaintiff's conduct and actions, is barred by the doctrine of laches.

**EIGHTH AFFIRMATIVE DEFENSE**
**(Good Faith/Justification, Privilege, and Legitimate Exercise of Management Discretion)**

8.      The Complaint, and each cause of action set forth therein, is barred in whole or in part, because Defendants did not discriminate, harass, or retaliate against Plaintiff or otherwise treat him in any manner in violation of California's Fair Employment and Housing Act or other established public policy.  Any and all decisions made by Defendants regarding Plaintiff's employment were based on reasonable lawful, legitimate, non-discriminatory reasons undertaken for fair and honest reasons regulated by good faith under the circumstances then existing.  Defendants further aver that any acts by Defendants regarding Plaintiff, with respect to all matters which are the subject matter of this litigation, were privileged under California law.  Finally, at all pertinent times, Defendants' actions with respect to Plaintiff were based on Defendants' legitimate, non-discriminatory interest in running an efficient business within the confines of the law, and were therefore privileged and/or done out of business necessity.  Accordingly, all such decisions constituted a just and proper exercise of management discretion.

**NINETH AFFIRMATIVE DEFENSE**
**(Failure to Use Preventative Opportunities/Avoidable Consequences)**

9.      Plaintiff's claims are barred in whole or in part because Plaintiff unreasonably failed to take advantage of preventative or corrective opportunities provided by Defendants or to avoid harm otherwise.

1

2

3

4

5

6

7

8

9

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28

HIRSCHFELD KRAEMER LLP
ATTORNEYS AT LAW
SAN FRANCISCO

**TENTH AFFIRMATIVE DEFENSE**
**(Failure to Mitigate)**

10.     Plaintiff has failed to mitigate his alleged damages, and to the extent of such failure, any damages awarded to Plaintiff should be reduced accordingly.

**ELEVENTH AFFIRMATIVE DEFENSE**
**(After-Acquired Evidence)**

11.     The Complaint, and each and every cause of action alleged therein, is barred, or any damages reduced, by after-acquired evidence.

**TWELTH AFFIRMATIVE DEFENSE**
**(Causation)**

12.     Defendants alleged conduct did not cause and was not a substantial factor in causing any supposed harm suffered by Plaintiff.

**THIRTEENTH AFFIRMATIVE DEFENSE**
**(Damages)**

13.     Plaintiff does not allege to have suffered any concrete, particularized harm.

**FOURTEENTH AFFIRMATIVE DEFENSE**
**(No Knowledge or Ratification)**

14.     Defendants had no knowledge of and did not ratify any of the alleged conduct Plaintiff alleges occurred.

**FIFTEENTH AFFIRMATIVE DEFENSE**
**(Punitive Damages)**

15.     Plaintiff is not entitled to punitive damages because none of the conduct Plaintiff alleges that Defendants engaged in was malicious, oppressive, or fraudulent.

**SIXTEENTH AFFIRMATIVE DEFENSE**
**(Plaintiff's Own Conduct)**

16.     Plaintiff's own conduct caused any of the supposed injuries he suffered.

**SEVENTEENTH AFFIRMATIVE DEFENSE**
**(At-Will Employment)**

17.     Plaintiff's employment with Defendants was at-will and he could be terminated at any time, for any lawful reason or for no reason at all.

**EIGHTEENTH AFFIRMATIVE DEFENSE**
**(Damages Were the Request of Unrelated, Pre-Existing, or Subsequent Conditions**
**Unrelated to Defendants' Conduct)**

18.     Plaintiff's damage, if any, were caused by pre-existing or subsequent conditions that are unrelated to any of Defendants' conduct.

**NINETEENTH AFFIRMATIVE DEFENSE**
**(Contributory Negligence)**

19.     Plaintiff's claims are barred because of his own negligence.

**TWENTIETH AFFIRMATIVE DEFENSE**
**(Assumption of the Risk)**

20.     Plaintiff's claims are barred under the doctrine of assumption of the risk.

**TWENTY-FIRST AFFIRMATIVE DEFENSE**
**(Economic Loss Doctrine)**

21.     Plaintiff's claims are barred by the economic loss doctrine.

**TWENTY-SECOND AFFIRMATIVE DEFENSE**
**(Consent)**

22.     Defendants are not responsible for Plaintiff's alleged harm because Plaintiff consented, both expressly and impliedly through his conduct.

**TWENTY-THIRD AFFIRMATIVE DEFENSE**
**(No Unlawful, Unfair, or Fraudulent Business Practice)**

23.     Without admitting the allegations of the Complaint, Plaintiff's Seventh Cause of Action for violation of the Unfair Competition Law, Section 17200 of the Business and Professions Code *et. seq.*, fails because the alleged practices of Defendants are not unfair, unlawful or fraudulent, the public is not likely to be deceived by any alleged practices, Defendants gained no competitive advantage by such practices, and the benefits of the alleged practices outweigh any harm or other impact they may cause.

**RIGHT TO AMEND AFFIRMATIVE DEFENSES**

Defendants have no independent knowledge, as of the filing of this Answer, of all facts allegedly constituting the causes of action in the Complaint, and based thereon, hereby

HIRSCHFELD KRAEMER LLP
ATTORNEYS AT LAW
SAN FRANCISCO

respectfully request leave of this Court to amend this Answer to include those affirmative defenses that are revealed during the course of Defendants' discovery.

**WHEREFORE**, Defendants fairlife, LLC and Jeff Lobus pray for judgment against Plaintiff as follows:

1. That Plaintiff takes nothing by his Complaint against Defendants, and that judgment be entered in favor of Defendants on each of the Plaintiff's causes of action;

2. That Defendants recover their costs of suit herein;

3. That Defendants be awarded reasonable attorneys' fees and costs deemed just and proper by the Court; and,

4. For such other and further relief as this Court deems just and proper.

Dated:  June 2, 2022

HIRSCHFELD KRAEMER LLP

By: _____

Hieu T. Williams
Jesse D. Sutz
Attorneys for Defendants
FAIRLIFE, LLC and JEFF LOBUS

**PROOF OF SERVICE**

**STATE OF CALIFORNIA, COUNTY OF SAN FRANCISCO**

I, the undersigned, am a resident of the State of California, over the age of eighteen years, and not a party to the within action. My business address is 456 Montgomery Street, Suite 2200, San Francisco, California  94104. On June 2, 2022, I served the following document(s) by the method indicated below:

**DEFENDANTS' ANSWER TO COMPLAINT**

☐  by transmitting **via facsimile** on this date from fax number (415) 834-0443 the document(s) listed above to the fax number(s) set forth below. The transmission was completed before 5:00 p.m. and was reported complete and without error. Service by fax was made by agreement of the parties, confirmed in writing. The transmitting fax machine complies with Cal. R.Ct 2003(3).

☐  by placing the document(s) listed above in a sealed envelope(s) with postage thereon fully prepaid, in the **United States mail** at San Francisco, California addressed as set forth below. I am readily familiar with the firm's practice of collection and processing correspondence for mailing. Under that practice it would be deposited in the U.S. Postal Service on that same day with postage thereon fully prepaid in the ordinary course of business. I am aware that on motion of the party served, service is presumed invalid if postal cancellation date or postage meter date is more than one day after date of deposit for mailing in affidavit.

☐  by placing the document(s) listed above in a sealed envelope(s) and by causing **messenger delivery** of the envelope(s) to the person(s) at the address(es) set forth below. I am readily familiar with the business practice of my place of employment with respect to the collection and processing of correspondence, pleadings and notices for hand delivery. On June 2, 2022, I caused to be served via messenger the above-listed documents.

☐  by personally **delivering** the document(s) listed above to the person(s) at the address(es) set forth below.

☐  by placing the document(s) listed above in a sealed envelope(s) and consigning it to an **express mail service** for guaranteed delivery on the next business day following the date of consignment to the address(es) set forth below.

☒  Due to the National Emergency and public health orders in California related to the coronavirus and COVID-19 pandemic, Hirschfeld Kraemer LLP attorneys and staff are working remotely and therefore have limited capabilities to send physical mail in the normal course of business. On this date, I personally transmitted the foregoing document(s) using electronic mail to the e-mail address(es) of the person(s) on the attached service list.

☐  by submitting an **electronic** version of the document(s) listed above to the court's approved electronic service vendor.

HIRSCHFELD KRAEMER LLP
ATTORNEYS AT LAW
SAN FRANCISCO

1

1

***Attorneys for Plaintiff, Gregory Weston:***

2

F. Shawn Azizollahi, Esq.
Poya Ghasri, Esq.

3

Gary Brotman, Esq.
Marquee Law Group, A Profession Corporation

4

9100 Wilshire Boulevard, Suite 445 East Tower
Beverly Hills, CA  90212

5

Telephone:     (310) 275-1844
Facsimile:      (310) 275-1801

6

Emails:         shawn@marqueelaw.com
                poya@marqueelaw.com

7

                gary@marqueelaw.com

8

I declare under penalty of perjury under the laws of the State of California that the above is true and correct.  Executed on June 2, 2022, at San Francisco, California.

9

10

*Cheri McCaffrey*

11

Cheri McCaffrey

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28

HIRSCHFELD KRAEMER LLP
ATTORNEYS AT LAW
SAN FRANCISCO

### *AMENDED* PROOF OF SERVICE

### STATE OF CALIFORNIA, COUNTY OF SAN FRANCISCO

I, the undersigned, am a resident of the State of California, over the age of eighteen years, and not a party to the within action.  My business address is 456 Montgomery Street, Suite 2200, San Francisco, California  94104.  On June 2, 2022, I served the following document(s) by the method indicated below:

### DEFENDANTS' ANSWER TO COMPLAINT

☐    by transmitting **via facsimile** on this date from fax number (415) 834-0443 the document(s) listed above to the fax number(s) set forth below.  The transmission was completed before 5:00 p.m. and was reported complete and without error.  Service by fax was made by agreement of the parties, confirmed in writing.  The transmitting fax machine complies with Cal. R.Ct 2003(3).

☒    by placing the document(s) listed above in a sealed envelope(s) with postage thereon fully prepaid, in the **United States mail** at San Francisco, California addressed as set forth below.  I am readily familiar with the firm's practice of collection and processing correspondence for mailing.  Under that practice it would be deposited in the U.S. Postal Service on that same day with postage thereon fully prepaid in the ordinary course of business.  I am aware that on motion of the party served, service is presumed invalid if postal cancellation date or postage meter date is more than one day after date of deposit for mailing in affidavit.

☐    by placing the document(s) listed above in a sealed envelope(s) and by causing **messenger delivery** of the envelope(s) to the person(s) at the address(es) set forth below.  I am readily familiar with the business practice of my place of employment with respect to the collection and processing of correspondence, pleadings and notices for hand delivery.  On June 3, 2022, I caused to be served via messenger the above-listed documents.

☐    by personally **delivering** the document(s) listed above to the person(s) at the address(es) set forth below.

☐    by placing the document(s) listed above in a sealed envelope(s) and consigning it to an **express mail service** for guaranteed delivery on the next business day following the date of consignment to the address(es) set forth below.

☒    Due to the National Emergency and public health orders in California related to the coronavirus and COVID-19 pandemic, Hirschfeld Kraemer LLP attorneys and staff are working remotely and therefore have limited capabilities to send physical mail in the normal course of business.  On this date, I personally transmitted the foregoing document(s) using electronic mail to the e-mail address(es) of the person(s) on the attached service list.

☐    by submitting an **electronic** version of the document(s) listed above to the court's approved electronic service vendor.

1

HIRSCHFELD KRAEMER LLP
ATTORNEYS AT LAW
SAN FRANCISCO

1    ***Attorneys for Plaintiff, Gregory Weston:***

2    F. Shawn Azizollahi, Esq.
     Poya Ghasri, Esq.
3    Gary Brotman, Esq.
     Marquee Law Group, A Profession Corporation
4    9100 Wilshire Boulevard, Suite 445 East Tower
     Beverly Hills, CA  90212
5    Telephone:      (310) 275-1844
     Facsimile:      (310) 275-1801
6    Emails:         shawn@marqueelaw.com
                     poya@marqueelaw.com
7                    gary@marqueelaw.com

8        I declare under penalty of perjury under the laws of the State of California that the above
     is true and correct.  Executed on June 3, 2022, at San Francisco, California.

9

10

11   _____
     Cheri McCaffrey

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28

                                        2

HIRSCHFELD KRAEMER LLP
ATTORNEYS AT LAW
SAN FRANCISCO

# Exhibit 3

REBECCA E. SHOPE
(*Pro Hac Vice Application in Process*)
rshope@shumaker.com
SHUMAKER
1000 Jackson Street
Toledo, Ohio  43604-5573
Telephone:  (419) 321-1453
Facsimile:  (419) 241-6894

HIEU WILLIAMS (SBN 280585)
hwilliams@hkemploymentlaw.com
JESSE D. SUTZ (SBN 338412)
(*Application Pending*)
jsutz@hkemploymentlaw.com
HIRSCHFELD KRAEMER LLP
456 Montgomery Street, Suite 2200
San Francisco, CA  94104
Telephone:  (415) 835-9000
Facsimile:  (415) 834-0443

Attorneys for Defendants
FAIRLIFE, LLC and JEFF LOBUS

HIRSCHFELD KRAEMER LLP
ATTORNEYS AT LAW
SAN FRANCISCO

UNITED STATES DISTRICT COURT

NORTHERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| GREGORY WESTON, an individual,<br><br>Plaintiff,<br><br>vs.<br><br>FAIRLIFE, LLC, a Delaware corporation; JEFF LOBUS, an individual; and DOES 1 through 50, inclusive,<br><br>Defendants. | Case No.<br><br>**DECLARATION OF ANDY ARQUETTE IN SUPPORT OF NOTICE OF REMOVAL**<br><br>[County of Contra Costa Superior Court Case No.: C22-00884]<br><br>Complaint Filed:  April 29, 2022 |

Andy Arquette, being first duly sworn, states as follows:

1.      I am the Chief Financial Officer for fairlife, LLC ("fairlife").

2.      I make this declaration based on my personal knowledge.

3.      fairlife is a limited liability company.

4.      fairlife has one member, Coca-Cola Co. ("KO").

5.      KO is incorporated under the laws of the State of Delaware.

6.      KO's corporate headquarters and principal place of business is located at 1 Coca Cola Plaza NW, Atlanta, Georgia, 30313, which is the location from which KO's officers direct, control, and coordinate KO's corporate activities.   This is also the location where the majority of its executive and administrative functions are performed.

7.      Pursuant to 28 U.S.C. § 12746, I declare under penalty of perjury that the foregoing is true and correct.

FURTHER DECLARANT SAYETH NOT.

_____
Andy Arquette

HIRSCHFELD KRAEMER LLP
ATTORNEYS AT LAW
SAN FRANCISCO

2

DECLARATION OF ANDY ARQUETTE ISO NOTICE OF REMOVAL
CASE NO.

1

2

3

4

5

6

7

8

9

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28

HIRSCHFELD KRAEMER LLP
ATTORNEYS AT LAW
SAN FRANCISCO

### CERTIFICATE OF SERVICE

**STATE OF CALIFORNIA, COUNTY OF SAN FRANCISCO**

     I am a citizen of the United States and a resident of the State of California, over the age of eighteen years, and not a party to the within action.  My business address is 456 Montgomery Street, Suite 2200, San Francisco, California  94104.  On June 6, 2022, I served the following document(s) by the method indicated below:

### DEFENDANTS' NOTICE OF REMOVAL

☐     by transmitting **via facsimile** on this date from fax number (415) 834-0443 the document(s) listed above to the fax number(s) set forth below.  The transmission was completed before 5:00 p.m. and was reported complete and without error.  Service by fax was made by agreement of the parties, confirmed in writing.  The transmitting fax machine complies with Cal. R.Ct 2003(3).

☒     by placing the document(s) listed above in a sealed envelope(s) with postage thereon fully prepaid, in the **United States mail** at San Francisco, California addressed as set forth below.  I am readily familiar with the firm's practice of collection and processing correspondence for mailing.  Under that practice it would be deposited in the U.S. Postal Service on that same day with postage thereon fully prepaid in the ordinary course of business.  I am aware that on motion of the party served, service is presumed invalid if postal cancellation date or postage meter date is more than one day after date of deposit for mailing in affidavit.

☐     by placing the document(s) listed above in a sealed envelope(s) and by causing **messenger delivery** of the envelope(s) to the person(s) at the address(es) set forth below.  I am readily familiar with the business practice of my place of employment with respect to the collection and processing of correspondence, pleadings and notices for hand delivery.  On June 6, 2022, I caused to be served via messenger the above-listed documents.

☐     by **personally delivering** the document(s) listed above to the person(s) at the address(es) set forth below.

☐     by placing the document(s) listed above in a sealed envelope(s) and consigning it to an **express mail service** for guaranteed delivery on the next business day following the date of consignment to the address(es) set forth below.

☒     by transmitting via **email** on this date the document(s) listed above to the email address(es) set forth below.

☐     by submitting an **electronic** version of the document(s) listed above to the court's approved electronic service vendor.

1

1

*Attorneys for Plaintiff:*

2  F. Shawn Azizollahi, Esq.          shawn@marqueelaw.com
   Poya Ghasri, Esq.                  poya@marqueelaw.com
3  Gary Brotman, Esq.                 gary@marqueelaw.com
   Marquee Law Group, A Profession Corporation
4  9100 Wilshire Boulevard, Suite 445 East Tower
   Beverly Hills, CA  90212
5  Telephone:      (310) 275-1844
   Facsimile:      (310) 275-1801

6

7      I declare under penalty of perjury under the laws of the United States that the foregoing is true and correct, and that I am employed by an officer of a member of the bar of this Court at whose direction the service was made.  Executed on June 6, 2022 at San Francisco, California.

8

9

10  _____
    Cheri McCaffrey

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28

HIRSCHFELD KRAEMER LLP
ATTORNEYS AT LAW
SAN FRANCISCO

CERTIFICATE OF SERVICE
CASE NO.: